275 N.E.2d 857 (1971)
DECATUR COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION, Appellant,
v.
PUBLIC SERVICE COMPANY OF INDIANA, a Corporation, Greensburg Colonial Manor Apartments, Inc., Appellees.
No. 369A47.
Appellate Court of Indiana, Division No. 1.
December 6, 1971.
*858 Hubert E. Wickens, Don Hubert Wickens, Greensburg, for appellant; Willett H. Parr, Jr., Lebanon, of counsel.
Greg K. Kimberlin, Duejean C. Garrett, Plainfield, for appellees; Sharpnack, Bigley & Jurgemeyer, Columbus, of counsel.
BUCHANAN, Judge.
STATEMENT OF THE CASE AND FACTS  This is an appeal from a Permanent Injunction prohibiting Appellant, Decatur County Rural Electric Membership Corporation (Decatur) from rendering electric service to a 4.5 acre tract (Property) recently annexed to the City of Greensburg, Indiana, which had previously been served by Appellee, Public Service Company of Indiana (Company).
On July 21, 1967 Decatur filed in the Decatur Circuit Court a Complaint requesting a restraining order, temporary injunction, and permanent injunction, which sought to prevent the Company from constructing electrical facilities or rendering electric service to the Property. The Company then filed a similar Complaint and the two causes were consolidated. After an evidentiary hearing, the trial court denied Decatur's prayer for temporary injunction and granted the request of the Company for temporary relief.
Several months later, the trial court entered its Special Findings of Fact and Conclusions of Law and a judgment thereon permanently restraining and enjoining *859 Decatur from constructing a system for furnishing electric service to the Property.
Subsequently, Decatur filed a Motion for New Trial, which Motion was overruled by the court on December 16, 1968. Decatur appeals from this ruling.
The Special Findings of Fact of the trial court may be summarized in pertinent parts as follows:
Prior to annexation of the Property, it was a part of a larger tract known as the Peters Farm, and was adjacent to the City of Greensburg. The Company has, since before the incorporation of Decatur, served the Peters Farm with electric energy and does so now. Decatur has never provided electric energy and has no facilities used and useful for the rendering of electric service in the Property. The Company serves electric energy to all customers immediately west of the Property from a primary distribution line constructed in 1950, the terminus of which is approximately 300 feet from the Property. The Company could have served the Property from the primary distribution line constructed in 1950.
Both Decatur and the Company serve electric energy to customers east of the Property from primary distribution lines constructed by the Company in 1966 and by Decatur in 1953.
The primary distribution lines of the Company were constructed without the consent of Decatur but it made no protest concerning such construction.
On or about July 12, 1967, at the request of the owners of the Property, the Company extended its facilities located in the Lee Addition immediately south of the Property in order to render electric service to the Property.
Decatur threatened to and would have, unless restrained by the court, entered onto the Property for the purpose of rendering electric service.
The court further found that the Company did not have an adequate remedy at law under the facts stated in its Complaint, and that Decatur did have an adequate remedy at law for any damages it might incur under the facts alleged.
ISSUES  Various issues are raised by the parties, but the essential issue is which party had the right to serve the Property.
The Company asserts that:
(1) the right to serve the Property was excluded from Decatur's original territory;
(2) the Company has always served the Peters Farm of which the Property was a part.
Decatur's argument is that:
(1) the Property was not excluded from Decatur's service territory;
(2) the only part of the Peters Farm served by the Company was the farmhouse;
(3) there is no evidence that the Company could have served the Property from the Company's line to the Peters farmhouse.
It is apparent from the record in this case that the parties to this dispute as to which of them has the right to provide electric service to the Property have not sought relief before the Public Service Commission of Indiana (Commission) before invoking equity jurisdiction.
If a question of failure to pursue statutory remedies is posed, such "a failure to so comply with the procedure set forth in the statute is jurisdictional, * * *." Monon R. Co. v. Citizens of Sherwood Forest Addition, Marion County, (1970) Ind. App., 257 N.E.2d 846, 850. To the same effect is City of Fort Wayne v. Bishop, (1950) 228 Ind. 304, 92 N.E.2d 544:
"Where the legislature creates a right and prescribes the method whereby the *860 right may be enforced the statutory remedy so provided is exclusive. Lang v. Scott (1825), 1 Blckf. 405, 435, 12 Am. Dec. 257; Ryan et al. v. Ray et al. (1886), 105 Ind. 101, 106, 4 N.E. 214; Wilmont v. City of South Bend (1943), 221 Ind. 538, 543, 48 N.E.2d 649; Ettinger v. Robbins (1945), 223 Ind. 168, 59 N.E.2d 118; Hinkle v. Howard (1947), 225 Ind. 176, 178, 73 N.E.2d 674, 675; New York, Chicago and St. Louis Railroad Company v. Zumbaugh (1895), 12 Ind. App. 272, 279, 39 N.E. 1058; Board of Comrs. v. Adler et al. (1922), 77 Ind. App. 296, 300, 301, 133 N.E. 602; * * *."
If the legislature has provided a remedy, courts have no jurisdiction over the subject matter until such time as those remedies are exhausted or denied. Any such decision is immediately reviewable under the provisions of I.C. 1971 8-1-3-1, Ind. Ann. Stat. § 54-443 (Burns 1971), which reads in part:
"Any person, firm, association, corporation, city, town or public utility adversely affected by any final decision, ruling, or order of the public service commission of Indiana, may, within thirty [30] days from the date of entry of such decision, ruling, or order, appeal to the Appellate Court of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions, * * *."
See also Citizens Gas & Coke Utility v. Sloan, (1964) 136 Ind. App. 297, 196 N.E.2d 290; Warren v. Indiana Telephone Co., (1940) 217 Ind. 93, 26 N.E.2d 399.
Under the new Rules of Civil Procedure adopted January 1, 1970, the question of jurisdiction over the subject matter is usually raised either in a consolidated motion before answer or by the answer itself if no such motion is used. See Rule TR. 12. However, this defense is available at any time before final decision and in any manner, and if not raised by a party it is our duty, sua sponte, to raise and determine it. Bohannan v. Bohannan (1961) 132 Ind. App. 504, 167 N.E.2d 717; State ex rel. Ayer v. Ewing, Judge, (1952) 231 Ind. 1, 106 N.E.2d 441; Harvey's Indiana Practice, Vol. 1, pp. 604-608. Unlike jurisdiction over the particular case, subject-matter jurisdiction cannot be imposed by mutual consent or waived. Indiana Real Estate Commission v. Blue, (1963) 135 Ind. App. 121, 190 N.E.2d 32; State ex rel. Standard Oil Co. v. Review Board of Indiana Employment Sec. Div., (1951) 230 Ind. 1, 101 N.E.2d 60.
Thus, sua sponte, we deem the real issue to be:
Did the trial court have proper jurisdiction over the subject matter of the action to invoke its permanent equity power in light of existing statutory remedies?
DECISION  It is our opinion that the parties to this appeal did not exhaust their administrative remedies and, therefore, the trial court did not have subject-matter jurisdiction to invoke permanent equity.
The standard by which to measure compliance with statutory remedies has been defined in Public Service Commission of Indiana et al. v. City of Indianapolis, (1956) 235 Ind. 70, 83, 131 N.E.2d 308:
"However, where the statute provides for a procedure for such review or for a judicial remedy, it excludes any common law or equitable procedure to the extent such statutory provisions are adequate in protecting and preserving such substantive rights guaranteed by the constitution, the statutes or general principles of law. Such statutory procedure must be followed at least to the extent of the remedy available before resort is made to any common law or equitable remedy. Ballman v. Duffecy, supra (1952), 230 Ind. 220, 102 N.E.2d 646; Joseph E. Seagrams & Sons v. Board of Com'rs (1943), 220 Ind. 604, 45 N.E.2d 491; State ex rel. White v. Hilgemann, *861 Judge (1941), 218 Ind. 572, 34 N.E.2d 129; Warren v. Indiana Telephone Co. (1940), 217 Ind. 93, 26 N.E.2d 399." (Emphasis supplied.)
Note the words "at least to the extent of the remedy available before resort is made to any * * * equitable remedy." Before a court may take subject-matter jurisdiction over a class of cases for which a statutory remedy exists, it must be shown that the statutory provisions are inadequate in protecting and preserving substantive rights. The parties are silent on this point. No showing is even attempted as to why the administrative road is not traveled prior to seeking equity.
We recognize that the Commission is without jurisdiction unless such is conferred upon it by applicable statutes. Meyers v. Evansville Water Works Dept., (1970) Ind. App., 261 N.E.2d 88.
The power and authority of the Commission to determine as to which one of two utilities has the right to provide electric service to a given area emanates from two sections of the Public Service Commission Act.[1] The first section is I.C. 1971 8-1-2-54, Ind. Ann. Stat. § 54-408 (Burns 1951), and reads as follows:
"Complaints  Investigation and hearing.  Upon a complaint made against any public utility by any mercantile, agricultural or manufacturing society or by any body politic or municipal organization or by ten [10] persons, firms, corporations or associations, or ten [10] complainants of all or any of the aforementioned classes, or by any public utility, * * * that any regulation, measurement, practice or act whatsoever affecting or relating to the service of any public utility, or any service in connection therewith, is in any respect unreasonable, * * * or unjustly discriminatory, * * * the commission shall proceed, with or without notice, to make such investigation as it may deem necessary or convenient. But no order affecting said rates, tolls, charges, schedules, regulations, measurements, practice or act, complained of, shall be entered by the commission without a formal public hearing. [Acts 1913, ch. 76, § 57, p. 167.] (Emphasis supplied.)
The second section giving the Commission power to control service-related questions of public utilities is I.C. 1971 8-1-2-61, Ind. Ann. Stat. § 54-415 (Burns 1971), which reads:
"Complaint by public utility.  Any public utility may make complaint as to any matter affecting its own rates or service with like effect as though made by any mercantile, agricultural or manufacturing society, body politic or municipal organization or by any ten [10] persons, firms, corporations or associations. * * * [Acts 1913, ch. 76, § 64, p. 167; 1951, ch. 161, § 1, p. 415; 1963, ch. 187, § 1, p. 237.]" (Emphasis supplied.)
I.C. 1971 8-1-2-1, Ind. Ann. Stat. § 54-105 (Burns 1971), describes the term "service" as intended to be used "in its broadest and most inclusive sense." Thus, either party, if they are public utilities, could have filed a complaint with the Commission against the other party seeking a determination of who possessed the initial and subsequent right to service the Property.
There can be no question that the Company is a public utility as defined in Burns § 54-105, supra; and it was held in Kosciusko County REMC v. Public Service Comm., (1948) 225 Ind. 666, 77 N.E.2d 572, that corporations formed under the REMC Act are also public utilities.
The Commission has supervisory powers over what territories an REMC may serve. Boone Co. REMC v. Public Service Comm., (1958) 129 Ind. App. 175, 155 N.E.2d 149; Kosciusko County R----C v. Public Service Comm., supra.
*862 The Commission is entrusted with the authority to control and regulate public utilities. State ex rel. Indianapolis Traction & Terminal Co. v. Lewis, (1918) 187 Ind. 564, 120 N.E. 129. As an administrative agency, it is presumed to be qualified by knowledge and experience to perform this function. The regulation of public utilities is a technical field requiring expertise in just the kind of determination before us. Such questions as to what constitutes a service area, the definition of a secondary line, and the physical ability of a public utility to service a particular area, are examples of technical questions which the legislature intended the Commission as a qualified administrative agency to answer.
Thus, either party to this dispute should have filed a complaint with the Commission against the other party seeking a determination of who possessed the initial and subsequent right to service the Property. We construe Burns § 54-408, supra, and Burns § 54-415, supra, as intending that utilities, as well as the public, have this long established administrative remedy available which we deem adequate to meet their objectives. The Decatur Circuit Court, while a court of general jurisdiction, did not have jurisdiction of the class of cases to which the case at bar belongs; i.e., it had no right, authority, or power to determine which of two public utilities has the right to provide electric service to a particular area. Only the Commission has such right under Burns § 54-408, supra, and Burns § 54-415, supra.
Once the Commission makes its decision, the parties are free to proceed accordingly. If the Commission finds that the Property was included in Decatur's service territory, then the Company may proceed under I.C. 1971 X-X-XX-XX, Ind. Ann. Stat. § 55-4418a (Burns 1971), and condemn the annexed area.[2] Any other questions concerning the impact and interpretation of Burns § 55-4418a must wait until that statute has been properly brought into play, and that cannot occur until it is determined which party had the initial right to service the Property. Conversely, if the Commission finds that the Property was excluded from Decatur's service territory, the matter is settled and Burns § 55-4418a has no effect. Any decision of the Commission is subject to judicial review by this court under the provisions set out in I.C. 1971 8-1-3-1, Ind. Ann. Stat. § 54-443 (Burns 1971).
Litigants in these circumstances cannot take flight from an adequate statutory administrative remedy by seeking sanctuary in the courts.
While we hold that the trial court did not have jurisdiction of the subject matter to invoke permanent equity in this case, it is a general rule in most jurisdictions, including this one, that courts may impose temporary equity in aid of an administrative agency's jurisdiction to assist the agency in preserving the status quo, or to promote the public interest, until the administrative question has been determined. (See 73 C.J.S. Public Administrative Bodies and Procedure § 45, p. 362, and Southern Indiana Gas and Elec. Co. v. Indiana Statewide Rural Elec. Coop., Inc., (1968) 251 Ind. 459, 242 N.E.2d 361.) The action in such cases, however, is to protect, rather than defeat, the jurisdiction of the particular agency. (See Domanick v. Triboro Coach Corp., (1940) 259 App.Div. 657, 20 N.Y.S.2d 306.) Accordingly, if the trial court is presented with an emergency situation, it may then enter a temporary order, but it may not invoke permanent equity when the legislature has provided a statutory remedy consisting of an administrative agency created for the express purpose of regulating and controlling service by public utilities.
*863 The decision of the trial court is therefore void. This action is remanded to the trial court with instructions to enter a temporary order allowing the party now serving the Property to continue serving it until such time as the Public Service Commission decides the issue.
Remanded with instructions.
SULLIVAN, P.J., and LOWDERMILK and ROBERTSON, JJ., concur.
NOTES
[1] See Poparad v. Indianapolis Railways, Inc., (1942) 111 Ind. App. 314, 39 N.E.2d 871 (transfer denied).
[2] The Company's question concerning the applicability of this statute when no customers are being served in the area has been answered in City of Greenfield v. Hancock County REMC, (1971) Ind., 266 N.E.2d 799.