## Philadelphia Electric Company *v.* Human Relations Commission.

Argued February 9, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-SON, JR., MENCER and ROGERS. Judge BLATT disqualified herself and did not participate.

*Ernest R. von Starck,* with him *Allen W. Stewart* and, of counsel, *Edward G. Bauer, Jr.,* and *Morgan, Lewis & Bockius,* for appellant.

*Roy Yaffe,* with him *S. Asher Winikoff,* General Counsel, *Robert S. Englesberg,* Assistant General Counsel, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE ROGERS, May 4, 1972:

This is an appeal from an interlocutory order of the Pennsylvania Human Relations Commission (PHRC) denying the appellant, Philadelphia Electric Company's (Company), motion to dismiss the PHRC's own complaint for lack of jurisdiction of the subject matter. By virtue of PHRC's certification of its opinion that its order involves a controlling question of law, we

have, pursuant to Section 501(b) of Art. V of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, 17 P.S. §211.501(b), permitted this appeal.

The complaint initiated by and before the PHRC alleges that the Company has violated Section 5(i) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, as amended, 43 P.S. §955(i), by engaging in racially discriminatory practices (1) in withholding from blacks the services of its home economics department, (2) in applying more stringent rules relating to security deposits and exacting greater amounts of such deposits from blacks, and (3) in terminating service for non-payment of bills more quickly and for lesser delinquencies in black neighborhoods. The Company contends that all of these complaints relate to rates and services, that jurisdiction of such complaints is vested in the Pennsylvania Public Utility Commission (PUC) and that PHRC has no jurisdiction. We are informed that the home economics department is not conducted on premises of the Company but by telephone and visitation by Company employes to customers' homes. The PHRC does not contest these facts or contend that all of the activities complained of are not in the area of rates and services. It contends only that the Pennsylvania Human Relations Act, 43 P.S. §951, *et seq.,* confers jurisdiction in it. We have concluded that the PUC does have exclusive jurisdiction of rates and the services here in issue and that the Legislature has given no jurisdiction to PHRC in the premises.

Section 11(a) of the Act of March 31, 1937, P. L. 160, as amended, 66 P.S. §462(a), confers upon the PUC the power and imposes upon it the duty to administer the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1101 *et seq.* That

law pertinently requires utilities to file tariffs with the PUC. Section 302, 66 P.S. §1142. Tariffs by Section 2(22), 66 P.S. §1102(22) include not only rates but also all "rules, regulations, practices or contracts involving" rates. The Act defines rates and services as follows:

" 'Rate' means every individual, or joint fare, toll, charge, rental, or other compensation whatsoever of any public utility, or contract carrier by motor vehicle, made, demanded, or received for any service within this act, offered, rendered, or furnished by such public utility, or contract carrier by motor vehicle, whether in currency, legal tender, or evidence thereof, in kind, in services or in any other medium or manner whatsoever, and whether received directly or indirectly, and any rules, regulations, practices, classifications or contracts affecting any such compensation, charge, fare, toll, or rental." Section 2(19), 66 P.S. §1102(19).

" 'Service' is used in this act in its broadest and most inclusive sense, and includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities, or contract carriers by motor vehicle, in the performance of their duties under this act to their patrons, employes, other public utilities, and the public, as well as the interchange of facilities between two or more of them. . . ." Section 2(20), 66 P.S. §1102(20).

The Public Utility Law contains fulsome interdictions of discrimination in rates for whatever cause, as follows: "No public utility shall, as to rates, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreason-

able difference as to rates, either as between localities or as between classes of service. Unless specially authorized by the commission, no public utility shall make, demand, or receive any greater rate in the aggregate for the transportation of passengers or property of the same class, or for the transmission of any message or conversation for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance, or any greater rate as a through rate than the aggregate of the intermediate rates. Nothing herein contained shall be deemed to prohibit the establishment of reasonable zone or group systems, or classifications of rates or, in the case of common carriers, the issuance of excursion, commutation, or other special tickets at special rates, or the granting of nontransferable free passes, or passes at a discount to any officer, employe, or pensioner of such common carrier. No rate charged by a municipality for any public utility service rendered or furnished beyond its corporate limits shall be considered unjustly discriminatory solely by reason of the fact that a different rate is charged for a similar service within its corporate limits." Section 304; 66 P.S. §1144.

Concerning service, Section 402, 66 P.S. §1172, requires: "No public utility shall, as to service, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation or subject any person, corporation or municipal corporation to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to service, either as between localities or as between classes of service, but nothing herein contained shall be deemed to prohibit the establishment of reasonable classifications of service."

The Public Utility Law provides complete opportunity for complaint of discrimination. Section 309, 66

P.S. §1149, provides the remedy of complaint to the P.U.C. of injustness, unreasonableness or illegality of rates. By Section 412, 66 P.S. §1182, the PUC is given power, upon complaint, to prescribe just and reasonable standards and regulations as to services and facilities.

The provisions of the Public Utility Law imposing regulatory duties on the PUC are so comprehensive and detailed that the courts have consistently held that that Commission was intended to be the sole agency for the regulation of these immense, complex, essential and necessarily monopolistic business enterprises. As a corollary, the courts have steadfastly repulsed efforts of all other interests including, untypically, the judiciary itself, to intrude upon the areas committed to the PUC. They have without exception and from earliest time held that the regulation of utilities upon the subjects covered in the Public Utility Law is vested solely in the PUC; *Rochester Bldg. & Loan Assn. v. Beaver Valley Water Co.,* 68 Pa. Superior Ct. 122 (1918); *Panther Valley Water Co. v. Public Service Commission,* 70 Pa. Superior Ct. 8 (1918). That matters within its jurisdiction must be determined by it, even to the exclusion of the courts in the first instance; *Klein-Logan Co. v. Duquesne Light Company,* 261 Pa. 526, 104 A. 763 (1918); *Hickey v. Philadelphia Electric Company,* 122 Pa. Superior Ct. 213, 184 A. 553 (1936); *Lansdale Boro. v. Philadelphia Electric Company,* 403 Pa. 647, 170 A. 2d 565 (1961); *Einhorn v. Philadelphia Electric Company,* 410 Pa. 630, 190 A. 2d 569 (1963). That townships and boroughs may not intrude; *Duqesne Light Company v. Upper St. Clair Township,* 377 Pa. 323, 105 A. 2d 287 (1954); *Willits v. P.U.C.,* 183 Pa. Superior Ct. 62, 128 A. 2d 105 (1956); *Lansdale Boro. v. Philadelphia Electric Co., supra.* That counties may not interfere; *Chester County v. Philadelphia Elec-*

*tric Co.,* 420 Pa. 422, 218 A. 2d 331 (1966). And, finally, that departments of State governments may not regulate where the PUC is given jurisdiction; *Department of Highways v. P.U.C.,* 198 Pa. Superior Ct. 87, 182 A. 2d 267 (1962). The purpose in all this is, of course, to avoid confusion, conflict, needless duplication of authority and interference with essential enterprises already subject to comprehensive oversight, or as Mr. Justice MUSMANNO pungently remarks, "It [a County] may not, however, of its own volition throw a monkey wrench into . . . [the] . . . machinery with the thought that this may remedy a defect in the statewide mechanism." *Chester County v. Philadelphia Electric Co., supra,* 420 Pa. at 426, 218 A. 2d at 333.

We do not declare, despite the great body of law referred to, that utilities are immune from regulation by other agencies. Indeed, the PHRC clearly has power to complain, investigate and adjudicate alleged discrimination in employment practices of a utility under Section 5 of the Human Relations Act (43 P.S. §955), since this is clearly conferred. We hold only that we are bound to approach with circumspection the PHRC's contention that it may hear complaints and make orders concerning the rates and services of public utilities, so long exclusively committed to PUC regulation.

PHRC contends it is given jurisdiction to conduct a hearing on its own charges that the Company discriminates in giving advice on home economics, in requiring security deposits and in terminating service for failure to pay bills; and that if it decides that discrimination in those activities is occurring, to order the Company to change its practices. It so contends although deposit and termination practices are engaged in in accordance with rules and regulations filed with and approved by the PUC and although all of the allegedly discriminatory activities of the Company are

subject to complaint, hearing and order of the PUC and review by the courts. It finds its power thus to superimpose its *ad hoc* regulation upon the regulation of the same activities by the PUC in Section 5(i) of the Pennsylvania Human Relations Act (43 P.S. §955 (i)), which declares it unlawful for any person ". . . being the owner . . . of any place of public accommodation, resort or amusement to (1) Refuse, withhold from, or deny to any person because of his race, color, religious creed, ancestry or national origin, either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such place of public accommodation, resort or amusement." Where here is the *place,* the accommodations, advantages, facilities or privileges of which are refused or denied black persons? Is the requirement of a security deposit, or the termination of service, or advice on home economics, a *place?* Certainly not in any usual meaning of the word.

As we understand PHRC's position, however, it is that the Company maintains offices, that these offices are open to the general public, and that the Company solicits the patronage of the general public at its offices; *ergo* every activity in which the Company engages is subject to the Commission's jurisdiction. The Legislature has defined the term "place of public accommodation, resort or amusement" as follows: ". . . any place which is open to, accepts or solicits the patronage of the general public, including but not limited to inns, taverns, roadhouses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest, or restaurants or eating houses, or any place where food is sold for consumption on the premises, buffets, saloons, barrooms or any store, park or enclosure where spirituous or malt liquors are sold, ice cream parlors, confectioneries, soda fountains and all

stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind are retailed for consumption on the premises, drug stores, dispensaries, clinics, hospitals, bathhouses, swimming pools, barber shops, beauty parlors, retail stores and establishments, theatres, motion picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, fairs, bowling alleys, gymnasiums, shooting galleries, billiard and pool parlors, public libraries, kindergartens, primary and secondary schools, high schools, academies, colleges and universities, extension courses and all educational institutions under the supervision of this Commonwealth, nonsectarian cemeteries, garages and all public conveyances operated on land or water or in the air as well as the stations, terminals and airports thereof, but shall not include any accommodations which are in their nature distinctly private." Section 4(e) of the Pennsylvania Human Relations Act, as amended by Act of Dec. 10, 1970, P. L.      , No. 278, §1, 43 P.S. §954(1).

The Company's offices where business is solicited and merchandise sold are unquestionably places of public accommodation. But there is no charge here that PHRC's constituents are denied the privileges of the company's stores and local offices. It is plain to us that the Legislature means a place of public accommodation to be a physical location to which the general public is invited to do business. It did not intend to confer jurisdiction upon the PHRC of all activities of any person who maintains, without suggestion of discrimination, a place of public accommodation. To accept the latter construction requires either a wilful misreading of clear written language or an oracular power to divine legislative intention not given to courts. It would further confer upon PHRC the jurisdiction to

hear and decide complaints concerning virtually every professional and business transaction and many purely social engagements occurring in the State. The dimensions of the duties which would be imposed upon PHRC, considered together with its vast, clearly conferred, obligation to eradicate discrimination in employment, housing and public accommodation, would cause us to pause over the meaning of legislation less clear than this statute's use and definition of the term "place of public accommodation." The Public Utility Code clearly prohibits discrimination in rates and services for whatever reason and just as clearly empowers the PUC to hear and decide such complaints. The complaints here made should and we trust will be brought and promptly pursued there.

The Order of the Pennsylvania Human Relations Commission denying Company's Motion to Dismiss is set aside and the Commission's Complaint is dismissed.