INDIANA BELL TELEPHONE COMPANY, INCORPORATED *v.*
M. DANIEL FRIEDLAND

[No. 2-676A242. Filed March 9, 1978. Rehearing denied April 17, 1978. Transfer denied July 14, 1978.]

*Bruce N. Cracraft, Harold L. Folley,* of Indianapolis, for Appellant.

*Stephen B. Caplin,* of Indianapolis, for appellees.

SULLIVAN, P.J.—Indiana Bell Telephone Company, Inc., (Bell) appeals from an interlocutory order which certified a class under Ind. Rules of Procedure, Trial Rule 23. We obtained jurisdiction pursuant to Ind. Rules of Procedure, Appellate Rule 4(B)(5).

Friedland, a practicing attorney in Indianapolis, filed a complaint on behalf of himself and others similarly situated. He challenges the validity of certain telephone rates and practices of Bell categorized under the heading of "joint user service".

Bell had on file with the Public Service Commission an approved tariff schedule[1] pursuant to which Friedland was assessed a rate

---

1.   Rates of a public utility must be reasonable and just, IC 8-1-2-4 (Burns Code Ed. 1973), and every public utility is required to file with the Public Service Commission a schedule of rates. IC 8-1-2-38 (Burns Code Ed. 1973).

The tariff schedule here involved reads, in pertinent parts:

which included an additional charge of $15.65 per month. Bell assessed this additional charge because Friedland shared his telephone service with another attorney for business purposes. The tariff provides that any customer who shares his telephone service with persons, firms or corporations other than the customer's family, employees, representatives or persons residing in his household shall be charged a "joint user" rate.

It appears that Friedland and his colleague, Ronald Bussell, shared space, expenses and use of the telephone service in one law office. However, they were not partners nor did they practice as a professional corporation nor was either the employee of the other. At the certification hearing, Friedland introduced evidence suggesting that different rates had been assessed to various customers, all of whom allegedly received substantially the same service.

With difficulty, we have been able to glean from Friedland's complaint and brief the following allegations:

(1) that his fellow attorney was his "representative" and therefore the "joint user" rate should not have been assessed to him;

(2) that the discrimination inherent on the face of the approved tariff, between lawyers within a firm and lawyers sharing some other arrangement, is arbitrary and unreasonable; and

---

"JOINT USER SERVICE"

"GENERAL

"Joint User Service is shared service arrangement which allows the business telephone exchange service of a customer to be used, when designated by the customer, by individuals, firms or corporations not otherwise permitted use of the customer's business service by this tariff."

\* \* \*

"USE OF SERVICE

"Customer's telephone service, equipment and facilities, as distinguished from public and semi-public telephone service, are furnished only for communications by the customer, his family, employees or representatives, or persons residing in the customer's household, except as the use of the service may be extended to joint users, and may not be resold \* \* \*"

(3) that, assuming the facial validity of the tariff, it has nevertheless been applied by Bell in an arbitrary and discriminatory manner.

Friedland brought his action as a class suit on behalf of all Bell customers similarly situated. He seeks damages for any wrongful charges as well as declaratory and injunctive relief. The trial court, after hearing evidence, certified a class as per the following order:

"Parties in person and by counsel, evidence heard under oath, Court finds that pursuant to TR. 23(A), 23(B)(3) class is hereby certified as those persons and/or businesses as of June 5, 1974 classified as joint users as set out in plaintiff's Exhibit '1' introduced herein, and plaintiff is hereby ordered to prepare form of notice of these proceedings for approval of the Court pursuant to 23(C)(2) within těn (10) days."

Plaintiff's Exhibit "1", referred to in the order, is a list supplied to Friedland by Bell of all customers in the Indianapolis area who were being charged the "joint user" rate as of June 5, 1974. The class as thus fixed was composed of 142 separate persons or entities.

Our disposition of this appeal requires the resolution of two issues:

(1) Is subject-matter jurisdiction of the trial court a proper issue for determination upon review of an interlocutory order certifying the existence of a class?

(2) If so, did the trial court have subject-matter jurisdiction?

I.

Bell contends that the trial court is without jurisdiction because Friedland is attacking the rates, services and practices of a public utility, matters which Bell argues are exclusively within the purview of the Public Service Commission.

Although we are reviewing the propriety of an interlocutory order certifying a class, we properly consider the trial court's jurisdiction over the subject matter for the following reasons. First, it is well-established that "[w]hen there is a lack of jurisdiction of the subject matter in the trial court, the question may be raised at any time and in any manner before final decision and, if not raised in the trial court or by a

party to the appeal, then it is the duty of the appeal court *sua sponte* to raise and determine it." Bobbitt, Indiana Appellate Practice and Procedure, ch. 5, p. 77 (1972). The court in *Decatur County REMC v. Public Service Co.* (1971), 150 Ind. App. 193, 197, 275 N.E.2d 857, 860, stated in reviewing the grant of a permanent jurisdiction:

> "Under the new Rules of Civil Procedure adopted January 1, 1970, the question of jurisdiction over the subject matter is usually raised either in a consolidated motion before answer or by the answer itself if no such motion is used. See Rule TR. 12. However, this defense is available at any time before final decision and in any manner, and if not raised by a party it is our duty, sua sponte, to raise and determine it. *Bohannan v. Bohannan* (1961), 132 Ind. App. 504, 167 N.E.2d 717; *State ex rel. Ayer v. Ewing, Judge*, (1952), 231 Ind. 1, 106 N.E.2d 441; Harvey's Indiana Practice, Vol. 1, pp. 604-608. Unlike jurisdiction over the particular case, subject-matter jurisdiction *cannot* be imposed by mutual consent or waived. *Indiana Real Estate Commission v. Blue* (1963), 135 Ind. App. 121, 190 N.E.2d 32; *State ex rel. Standard Oil Co. v. Review Board of Indiana Employment Sec. Div.*, (1951), 230 Ind. 1, 101 N.E.2d 60."

Furthermore, Ind. Rules of Procedure, Trial Rule 23, which sets forth the requirements for a class action, specifies that where, as alleged here, there are common questions of fact or law, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." TR. 23(B)(3). Obviously, if the trial court is without subject-matter jurisdiction, this class action would not be the "superior" method of adjudication. Thus, recognition of subject-matter jurisdiction is inherent in the review of a class certification under TR. 23. In this connection, it would seem an exercise in futility to affirm an interlocutory order certifying a class, thereby encouraging lengthy further proceedings, if we were of the view that the trial court lacks subject-matter jurisdiction of the action brought by the class.

We therefore proceed to consider Bell's contention that the trial court lacks jurisdiction over the claims presented by Friedland.

## II.

Under Indiana law the establishment of rates for public utilities is a legislative function. *Public Service Commission v. Indiana Bell*

*Tel. Co.* (1953), 232 Ind. 332, 112 N.E.2d 751. The Public Service Commission is a creature of the legislature, *see Town of Merrillville v. Lincoln Utilities, Inc.* (1976), 171 Ind. App. 224, 355 N.E.2d 851, and it possesses only that jurisdiction or authority granted to it by statute. *General Tel. Co. of Ind. v. Public Service Commission of Ind.* (1958), 238 Ind. 646, 154 N.E.2d 372; *Indiana Tel. Corp. v. Indiana Bell Telephone Co., Inc.* (1976), 171 Ind. App. 616, 358 N.E.2d 218; *Citizen's Gas and Coke Utility v. Sloan* (1964), 136 Ind. App. 297, 196 N.E.2d 290.

It is also axiomatic that where an administrative remedy is provided by statute, one who seeks relief must first exhaust the administrative alternatives before applying for judicial review. *State ex rel. Paynter v. Marion County Superior Court, Rm. No. 5* (1976), 264 Ind. 345, 344 N.E.2d 846; *City of East Chicago v. Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N.E.2d 459.

Bell contends that Friedland is collaterally attacking, through the judicial process, acts of a public utility intended by the legislature to be reviewed and regulated by the Public Service Commission. Our consideration of this contention requires us to first determine whether in fact the pertinent statutes grant jurisdiction over such claim to the Public Service Commission and, if so, whether the Commission can be divested of jurisdiction when damages are sought.

Friedland alleges alternatively that (1) the tariff incorporating the "joint user" concept is unreasonable, (2) he should be considered a "representative" of his colleague and therefore excluded from the "joint user" rate; and (3) the tariff and rates have been applied in an arbitrary and discriminatory manner.

Initially, we note that Friedland's first allegation attacks the validity and reasonableness of the tariff itself, and therefore is properly within the exclusive jurisdiction of the Public Service Commission. The question of proper establishment of utility rates is a matter to be determined by the Public Service Commission and only thereafter may such determination be reviewed by the courts. *State ex rel. Indianapolis Water Co. v.*

*Boone Circuit Court* (1974), 261 Ind. 583, 307 N.E.2d 870; *Public Service Commission v. City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308.

Friedland's second and third allegations, while still tangentially concerned with definitional concepts, nevertheless challenge the "services" and "practices" of Bell in applying the rate, as opposed to the validity of the rate itself. It is argued that discrimination in application of rates approved by the Public Service Commission presents one of those instances in which the judicial nature of the claim overshadows any administrative characteristic.[2]

Friedland brings this action under IC 8-1-2-107 (Burns Code Ed. 1973),[3] which creates the right of a civil action for damages sustained in consequence of "unlawful acts" of a public utility. "Unlawful acts" are more specifically defined in part by the following statutes:

IC 8-1-2-103 (Burns Code Ed. 1973) provides, in pertinent part:

> *"Discrimination in sales or service—Penalty—Special service.* — If any public utility, or any agent or officer thereof, or any officer of any municipality constituting a public utility, as defined in this act [8-1-2-1 — 8-1-2-120], shall, directly or indirectly, by any device whatsoever, charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered, or for any service in connection therewith, than that prescribed in the published schedules or tariffs then in force or established as provided herein, or than it charges, demands, collects or receives from any

2. Courts have been held to properly retain jurisdiction over claims of an administrative nature where there is alleged fraud, *Citizen's Gas and Coke Utility v. Sloan* (1964), *supra*, 196 N.E.2d 290, arbitrary and capricious action by an administrative body, *Public Service Commission v. Indiana Bell Tel. Co., supra*, 112 N.E.2d 751, breach of a contract involving telephone service, *Indiana Telephone Corp. v. Indiana Bell Tel. Co., Inc., supra*, 358 N.E.2d 218, or conspiracy to prevent competition. *Warehouse Distributing Corp. et al. v. Dixon* (1933), 97 Ind. App. 475, 187 N.E. 217.

3. *"Damages for unlawful acts.* — If any public utility shall do, or cause to be done or permit to be done, any matter, act or thing in this act [8-1-2-1 — 8-1-2-120] prohibited or declared to be unlawful, or shall omit to do any act, matter or thing required to be done by this act, such public utility shall be liable to the person, firm or corporation injured thereby in the amount of damages sustained in consequence of such violation: Provided, That any recovery as in this section provided shall in no manner affect a recovery by the state of the penalty prescribed for such violation."

other person, firm or corporation for a like and contemporaneous service, such public utility shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful, and, upon conviction thereof, shall forfeit and pay into the state treasury not less than one hundred dollars [$100] nor more than one thousand dollars [$1,000] for each offense, and such agent or officer so offending shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than one hundred dollars [$100] nor more than one thousand dollars [$1,000], for each offense, or imprisonment in the state prison for not less than one [1] year: . . ."

and IC 8-1-2-105 (Burns Code Ed. 1973) provides:

"*Unreasonable preference—Penalty.*—If any public utility makes or gives any undue or unreasonable preference or advantage to any particular person, firm or corporation, or shall subject any particular reason, firm or corporation to any undue or unreasonable prejudice or disadvantage in any respect whatsoever, such public utility shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared unlawful. Any person, firm or corporation violating the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than fifty dollars [$50.00] nor more than one thousand dollars [$1,000] for each offense."

Friedland not only admits but asserts that the questioned conduct of Bell falls within the definition of "service" as contemplated by the above statutes. Our inquiry is therefore narrowed to the question whether the Public Service Commission has jurisdiction to review and resolve claims arising under IC 8-1-2-103 and IC 8-1-2-105 and, if so, whether its jurisdiction may be divested when a prayer for damages is a part of the claim.

An analysis of the pertinent statutes and case law leads us to the conclusion that the legislative intent was to grant the Public Service Commission jurisdiction over such claims. It is established that the Commission is empowered to investigate "services" as defined in the "broadest and most inclusive sense", and to determine whether, and provide relief if, such "services" are "in any respect unreasonable * * * or unjustly discriminatory." *Decatur County REMC v. Public Service Commission, supra,* 275 N.E.2d at 861.

The obligation of the Public Service Commission to entertain and investigate complaints concerning discriminatory and unreasonable practices of a public utility is set forth by IC 8-1-2-54 (Burns Code Ed. 1973), which reads:

> *"Complaints—Investigation and hearing.—*Upon a complaint made against any public utility by any mercantile, agricultural or manufacturing society or by any body politic or municipal organization or by ten [10] persons, firms, corporations or associations, or ten [10] complainants of all or any of the aforementioned classes, or by any public utility, that any of the rates, tolls, charges or schedules or any joint rate or rates in which such petitioner is directly interested are in any respect unreasonable or unjustly discriminatory, or that any regulation, measurement, practice or act whatsoever affecting or relating to the services of any public utility, or any service in connection therewith, is in any respect unreasonable, unsafe, insufficient or unjustly discriminatory, or that any service is inadequate or cannot be obtained, the commission shall proceed, with or without notice, to make such investigation as it may deem necessary or convenient. But no order affecting said rates, tolls, charges, schedules, regulations, measurements, practice or act, complained of, shall be entered by the commission without a formal public hearing."

The power of the Public Service Commission to remedy such practices is embodied in IC 8-1-2-69 (Burns Code Ed. 1973):

> *"Inadequate service—Orders.* — Whenever, upon investigation made under the provisions of this act [8-1-2-1 — 8-1-2-120], the commission shall find any regulations, measurements, practices, acts or service to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory or otherwise in violation of any of the provisions of this act; or shall find that any service is inadequate or that any service which can be reasonably demanded cannot be obtained, the commission shall determine and declare and by order fix just and reasonable measurements, regulations, acts, practices or services to be furnished, imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory, inadequate, or otherwise in violation of this act, as the case may be, and shall make such other order respecting such measurement, regulation, act, practice or service as shall be just and reasonable."

Finally, IC 8-1-2-115 (Burns Code Ed. 1973) establishes the duty of the Public Service Commission to enforce the above provisions:

"*Enforcing provision of act.* — The commission shall inquire into any neglect or violation of the laws of this state or the ordinances of any city or town by any public utility doing business therein, or by the officers, agents or employees thereof, or by any person operating the plant of any public utility, and shall have the power, and it shall be its duty, to enforce the provisions of this act [8-1-2-1 — 8-1-2-120], as well as all other laws, relating to public utilities. Any forfeiture or penalty herein provided shall be recovered and suit therein shall be brought in the name of the state of Indiana in the circuit or superior court where the public utility has its principal place of business. Complaint for the collection of any such forfeiture may be made be the commission or any member thereof, and, when so made, the action so commenced shall be prosecuted by the general counsel."

The *Decatur* decision also established that the jurisdiction of the Public Service Commission over such claims is *exclusive*. It was there held that the trial court is without jurisdiction of a claim where a complaint could have been filed with the Public Service Commission. The court also noted:

"If the legislature has provided a remedy courts have no jurisdiction over the subject-matter until such time as those remedies are exhausted or denied." 275 N.E.2d at 860.

\* \* \*

"Before a court may take subject-matter jurisdiction over a class of cases for which a statutory remedy exists, it must be shown that the statutory provisions are inadequate in protecting and preserving substantive rights." 275 N.E.2d at 861.

Further comments of the court bear significance here:

"The Commission is entrusted with the authority to control and regulate public utilities. *State ex rel. Indianapolis Traction & Terminal Co. v. Lewis*, (1918), 187 Ind. 564, 120 N.E. 129. As an administrative agency, it is presumed to be qualified by knowledge and experience to perform this function. The regulation of public utilities is technical field requiring expertise in just the kind of determination before us. Such questions as to what constitutes a service area, the definition of a secondary line, and the physical ability of a public utility to serve a particular area,

are examples of technical questions which the legislature intended the Commission as a qualified administrative agency to answer."

\* \* \*

"Litigants in these circumstances cannot take flight from an adequate statutory administrative remedy by seeking sanctuary in the courts." 275 N.E.2d at 862.

A similar expression was made in *Public Service Commission of Indiana v. City of Indianapolis, supra*, 131 N.E.2d at 313:

"It is established law in this state that there is an inherent right to appeal to the courts for relief against the violations of personal or property rights as a result of administrative action. The legislature may not absolutely deprive one of such relief or judicial review. However, where the statute provides for a procedure for such review or for a judicial remedy, it excludes any common law or equitable procedure to the extent such statutory provisions are adequate in protecting and preserving such substantive rights guaranteed by the constitution, the statutes or general principles of law. Such statutory procedure must be followed at least to the extent of the remedy available before resort is made to any common law or equitable remedy. *Ballman v. Duffecy*, 1952, *supra* 230 Ind. 220, 102 N.E.2d 646; *Joseph E. Seagram & Sons v. Board of Commissioners*, 1943, 220 Ind. 604, 45 N.E.2d 491; *State ex rel. White v. Hilgemann*, 1941, 218 Ind. 572, 34 N.E.2d 129; *Warren v. Indiana Telephone Co.*, 1940, 217 Ind. 93, 26 N.E.2d 399."

Friedland counters by citing *State ex rel. Indianapolis Water Co. v. Niblack* (1959), 240 Ind. 32, 161 N.E.2d 377, for the proposition that the Public Service Commission is divested of an otherwise cognizable claim whenever damages are sought. *Niblack*, however, does not support this proposition. The language in that case upon which Friedland relies reads:

"We should note, however, that the commission has no judicial power to render a money judgment, as is sought by plaintiff in respondent court." 161 N.E.2d at 378.

The quoted language is obiter dicta. The court did not determine the question of the trial court's jurisdiction but rather rejected the petition for a writ of prohibition for failure of the pleadings to show

entitlement to the relief sought. Furthermore, the language does no more than state the legal truism that an administrative body cannot grant relief unless it is so empowered by statute. It does not mandate the conclusion that this restriction divests the Commission of jurisdiction of an otherwise cognizable claim. On the contrary, it establishes the necessity of instituting an action in the trial court to obtain damages *pursuant and subsequent to* the Commission's determination of the issues.

The proper procedure for review of rates of a public utility is set forth in *State ex rel. Evansville City Coach Lines v. Rawlings* (1951), 229 Ind. 552, 559, 99 N.E.2d 597, 600, and is equally applicable to attacks against practices and services of a public utility:

> "If, as is contended by respondent, relator is charging illegal rates in the city of Evansville and thus violating an order or regulation of the Public Service Commission plaintiffs, in the actions pending in said Superior Court, must first exhaust their remedy of petition to the commission by pointing out that said company is not complying with the provisions of an approved tariff schedule and is thereby violating an order of the commission. *Indianapolis Water Co. v. Moynahan Prop. Co.* (1936), 209 Ind. 453, 456, 198 N.E.2d 312; *Southern Ind. R. Co. v. Railroad Com., etc.* (1909), 172 Ind. 113, 117, 119, 87 N.E. 966, *supra; In Re Englehard & Sons Co.* (1914), 231 U.S. 646, 651, 34 S.Ct. 258, 58 L. Ed. 416, 418.

> "It then becomes the duty of the Public Service Commission to make an investigation of the matters alleged in said petition and if, after notice and hearing, it should find that illegal rates are being charged by relator then the commission, under the authority vested in it by the legislature, will order the offender to desist from charging such illegal rates and, if after such order by the commission, such offender refuses to comply therewith, then the commission is the proper party to institute court proceedings to compel compliance with its order. *Wabash R. Co. v. Railroad Com., etc.* (1911), 176 Ind. 428, 439, 95 N.E. 673. On the other hand, if after such investigation the commission finds that the alleged violation does not exist and no order is being violated, then the petitioners may have their day in court by an appeal to any court of competent jurisdiction upon the ground that the order or decision of the commission is 'insufficient, unreasonable or unlawful' as provided in § 47-1249, Burns 1940 Replacement. Cf. *State ex rel. McCormick v. Superior Court of Knox County*

(1951), 229 Ind. 118, 95 N.E.2d 829, 832; *In re Northwestern Indiana Tel. Co.* (1930), 201 Ind. 667, 171 N.E. 65."

Other jurisdictions have refused to allow a claim for damages to circumvent a Public Service Commission determination. A strikingly similar set of circumstances was dealt with in *Stillman and Dolan, Inc. v. Chesapeake and Potomac Telephone Co. of Maryland* (1976), 30 Md.App. 179, 351 A.2d 172. There, a customer brought an original class action in the trial court seeking damages from a telephone company for discriminatory charges and wrongful application of an approved tariff. The appellee court, interpreting statutes similar to ours, held that the Public Service Commission had exclusive jurisdiction over the determination of the propriety of such "services" of a public utility. It stated:

> "It is the clear legislative intent, apparent from the Public Service Commission Law, that this determination, in the first instance, be by the Commission and not by the courts. Such a determination is within the expertise of the Commission, and it is the function of that agency to hear and consider evidence brought before it, and its duty to make findings on the propriety of the Telephone Company's actions, assuming, with respect to the demurrer, they are as alleged in the declaration. We can conceive that there may be valid reasons why demands for every type of service cannot always be met forthwith. Whether particular facts constitute a failure to extend a privilege or facility uniformly enjoyed by others under substantially similar circumstances, or whether the failure or refusal to grant certain services results in 'any undue or unreasonable preference', or is discriminatory, or causes 'any undue or unreasonable prejudice', cries for expert evaluation, and this evaluation is the function of the Commission." 351 A.2d at 178.

The Court in *Stillman* further held that where a remedy was available from the Public Commission which contemplated a determination of the precise issue upon which further relief in the trial court would depend, such administrative remedy would require exhaustion even though the specific relief available from the Commission would differ from that available in the trial court. The court quoted *Spintman v. Chesapeake and Potomac Telephone Co. of Maryland* (1969), 254 Md. 423, 424, 255 A.2d 304, 307 as follows:

" 'The soundness of having such matters originally determined by a commission of persons qualified to evaluate the issues in a specialized field lies beyond dispute.

\* \* \*

If we were to follow the argument advanced by [*Spintman*] to its logical conclusion, we would witness the chaotic situation where juries would be performing the rate making function of the Public Service Commission by having a veto power over rates. Certainly, such would be the ultimate and practical effect on their action if they were allowed to render a verdict for reparation in favor of the plaintiff consumer in an action of assumpsit.' [citation omitted]. *The observation is apt with respect to any question which it is the duty of the Commission to determine originally.*" (emphasis supplied) 351 A.2d at 179.

In *Philadelphia Electric Company v. Pennsylvania Human Relations Commission* (1972), 5 Pa. Cmwlth. 329, 290 A.2d 699, the court held that complaints concerning discrimination in rendering service by a public utility were within the exclusive jurisdiction of the Public Utility Commission. The court commented upon the Pennsylvania Public Utility Law, as follows:

"The provisions of the Public Utility Law imposing regulatory duties on the PUC are so comprehensive and detailed that the courts have consistently held that that Commission was intended to be the sole agency for the regulation of these immense, complex, essential and necessarily monopolistic business enterprises. As a corollary, the courts have steadfastly repulsed efforts of all other interests including, untypically, the judiciary itself, to intrude upon the areas committed to the PUC.... [*M*]*atters within its jurisdiction must be determined by it even to the exclusion of the courts in the first instance.*" (Emphasis supplied) 290 A.2d at 701-702.

\* \* \*

"The Public Utility Code clearly prohibits discrimination in rates and services for whatever reason and just as clearly empowers the PUC to hear and decide such complaints." 290 A.2d at 703.

We conclude that any award of damages pursuant to IC 8-1-2-107 concerning conduct as specifically defined under IC 8-1-2-103 and IC 8-1-2-105 must be preceded by a determination of the Public Service Commission that such conduct or acts are "unlawful". Judicial review of the reasonableness of the

Commission's determination may be obtained through the normal appellate channels provided by IC 8-1-3-1 (Burns Code Ed. 1973), *et seq.*

The trial court is without jurisdiction to entertain the claim as presented. We reverse the class certification appealed, and order that it be vacated.

Staton, J. (participating by designation) and

White, J. concur.

NOTE — Reported at 373 N.E.2d 344.