Jason D. LINDOWER, et al.,
Plaintiffs-Appellants,

v.

CITY OF SOUTH BEND,
Defendant-Appellee.

No. 3–384A73.

Court of Appeals of Indiana,
Third District.

Feb. 13, 1985.

Daniel A. Manion, Doran, Manion, Boynton, Kamm & Esmont, South Bend, for plaintiffs-appellants.

Richard L. Hill, City Atty., Carolyn V. Pfotenhauer, Asst. City Atty., South Bend, for defendant-appellee.

GARRARD, Judge.

The plaintiffs in this case are officers and/or directors of the River Commons Homeowners Association (the homeowners). They filed a complaint for declaratory judgment and injunction against the City of South Bend (the city) seeking a determination of whether the city had a legal right to install water meters in the homes of the homeowners. They also sought a determination of several collateral issues relating to the proposed installation of meters. The

trial court granted the city's motion for summary judgment declaring *inter alia* "[t]hat the City has a legal right to install meters in River Commons...." The homeowners now appeal, raising essentially two issues, (1) whether the trial court had subject matter jurisdiction over this action and (2) whether there remained genuine issues as to material facts thus precluding the grant of summary judgment.

The factual background of this case is as follows. River Commons is a subdivision located in St. Joseph County outside of the city limits of South Bend. On July 24, 1978 the city entered into a lease-purchase agreement with South Bend Federal Savings and Loan Association (South Bend Federal) for the lease-purchase of the water system owned by South Bend Federal and which served residents of River Commons. The agreement was made pursuant to IC 19–3–11.5–1 *et seq.* (Repealed, Acts 1982, P.L. 74, Section 6, p. 611, effective January 1, 1983).

The Public Service Commission (PSC), by its order of October 4, 1979, approved the lease agreement and ordered:

"... that the rates and charges as approved in Cause No. 34737 by Order dated March 9, 1977, shall remain in full force and effect for all water services rendered in said area by said leased waterworks facilities until the same are changed pursuant to IC 19–3–11.5–5.

\*       \*       \*       \*       \*       \*

IT IS FURTHER ORDERED that any funds necessary to provide additions and extensions to increase the capacity in excess of the capacity required to serve the subdivision known "as River Commons shall not be included in the revenue requirements when establishing rates pursuant to IC 19–3–11.5–5 (or) in the alternative, shall be completely offset by reimbursement revenues derived from water service to customers in the subdivision known as Laurel Woods."

Cause No. 34737, referred to in the PSC's order, produced a "Schedule of Rates and Charges" approved by the PSC for water supplied in River Commons. The metered rates per month were:

| First 5625 gallons | $.89 per 1000 gallons |
| Next 9375 gallons | .60 per 1000 gallons |
| Over 15,000 gallons | .53 per 1000 gallons |

The minimum monthly charge was $7.50. During the time South Bend Federal operated the water system, the homeowners paid only the minimum monthly charge and water usage was not measured by water meters.

The city now wants to install meters in the homes in River Commons to measure each homeowner's usage and to charge each the rates approved in Cause No. 34737 and reaffirmed in the PSC's approval of the lease agreement. The homeowners filed suit seeking a declaration that the city has no right to install meters.

## I. Jurisdiction

The homeowners filed their complaint for declaratory judgment in the St. Joseph Superior Court. In its motion for summary judgment, the city challenged the court's jurisdiction over the subject matter of this case but did not prevail on that ground. The homeowners, now on appeal, have chosen to make a similar challenge.

The homeowners claim that the trial court never had the jurisdiction they once sought to invoke. Some discomfort with this position appears from the conclusion to their argument.

"The trial court arguably had jurisdiction under the old statute [IC 19–3–11.5–1 *et seq.*]. When that statute was repealed, the more general jurisdiction of the PSC, under IC 8–1–2–54 and others, probably took over."

Contrary to the homeowners' argument, the repeal of IC 19–3–11.5–1 *et seq.* does not affect this case which was begun before January 1, 1983, the effective date of the statute's repeal. *See* Acts 1982, P.L. 74, Sections 6, 7 and 8. IC 8–1–2–54, cited by the homeowners, is inapplicable because it applies only to complaints against a public utility. The definition of "public utility" in IC 8–1–2–1 specifically excludes municipalities which own or

operate water systems. Notwithstanding that misconception, the homeowners are correct that lack of subject matter jurisdiction may be raised at any time, including on appeal. *Indiana Bell Telephone Company, Incorporated v. Friedland* (1978), 175 Ind.App. 622, 373 N.E.2d 344, *cert. denied* 440 U.S. 916, 99 S.Ct. 1233, 59 L.Ed.2d 465. However, they have made no showing that jurisdiction of the subject matter of this case rested with the PSC to the exclusion of the trial court. In *Kentucky-Indiana Municipal Power Assoc. v. Public Service Co. of Indiana, Inc.* (1979), 181 Ind.App. 639, 393 N.E.2d 776, we said:

> "It is a fundamental principle of law that the Public Service Commission, as an administrative agency of the State of Indiana, is a body of limited jurisdiction which derives its authority solely from the Legislature and thereby possesses only such powers as are conferred on it by statute.... Unless a grant of power can be found in the statute, it must be concluded that there is none." (citations omitted)

393 N.E.2d at 780.

■ We find no statute conferring upon the PSC jurisdiction to hear this complaint. We are not persuaded that the trial court was without jurisdiction.

*II. Propriety of summary judgment*

■ The homeowners argue that the trial court erred by concluding that the city was entitled to summary judgment on the question of whether the city had a right to install water meters in River Commons. We will reverse the grant of summary judgment if, taking the facts alleged by the party opposing the motion as true, there is a genuine issue as to any material fact. *See Consolidated City of Indianapolis v. Cutshaw* (1983), Ind.App., 443 N.E.2d 853.

■ In their complaint for declaratory judgment, the homeowners requested that the trial court determine:

> "Whether the City has a legal right, contractual or otherwise, to install meters in the homes of the users of River Commons now being served by the water system and which users are presently paying a previously approved and acknowledged flat rate."

The homeowners argue that summary judgment should not have been granted because there was a question as to whether the utility's rules and regulations (the rules) which authorized the utility's installation of meters were enforceable against the homeowners. They contend there was no showing the rules were ever distributed to the homeowners. They cite 170 IAC 6–1–18 which requires all utilities to distribute a pamphlet describing the rights and responsibilities of its customers. It is apparent, however, that 170 IAC 6–1–18 applies only to *public* water utilities, not to municipally-owned utilities. *See* 170 IAC 6–1–2 and 170 IAC 6–1–1 referring to definition of "public utility" in IC 8–1–2–1.

The homeowners argue that, in any event, the rules were unenforceable because they were never agreed to by the homeowners. They then argue that even if the rules are enforceable, those rules contemplate a flat rate of $7.50 per month as is currently being charged to the homeowners. They present an argument which weaves through the issues of the existence or nonexistence of a contract, the effect of oral agreements on a contract, interpretation of a contract and waiver. They alternately deny the application of the rules and then cite them as support. Their argument is unavailing. The essential facts are simple.

The schedule of rates and charges approved by the PSC in Cause No. 34737 established *metered* rates per month to be charged for water usage in River Commons and also fixed a *minimum* amount all users would be charged per month, $7.50.[1]

---

1. The PSC, in Cause No. 35797, approved the agreement between South Bend Federal and the city and ordered that the rates established in Cause No. 34737 remain in effect. The home-owners contend that the city's testimony before the PSC in Cause No. 35797 evidenced an intention not to increase the rates. Their allegation has no relevance to the question of whether the

At the time of the PSC order and until recently, the homes in River Commons were not equipped with water meters. However, the eventual installation of such meters was unquestionably contemplated by the PSC order. Additionally the rules, which had been filed with the PSC and which were available at the city utility's office, provided:

"6. *Metering.* A. Unless otherwise specified in the contract between the Utility and the customer or by the rate on file, the water supplied will be measured by a meter or meters of standard manufacture, furnished and installed by the Utility according to its requirements in force and effect as amended from time to time. The customer shall provide for this purpose, free of expense to the Utility, a suitable place near the service entrance either in the basement or in an approved meter box installed by the Utility with the location of the meter box to be determined by the Utility. A remote reading device may be had by the customer."

Until such installation, the homeowners have been able to use unlimited quantities of water for which the city has only been able to charge the minimum amount. The homeowners now seek to take the absence of any specific contractual provision for the installation of water meters and transform it into a positive right to be charged a flat rate of $7.50 per month for unlimited amounts of water.

The homeowners are consumers using the water service offered by the city. They have no flat rate contract with the city as they would have us believe. The fact they have been privileged to use unlimited supplies of water at no greater expense than the minimum charge may establish their good fortune but it does not create a right to continued unmetered service.

The metered rates were approved by the PSC pursuant to IC 19–3–11.5–5 [2] which provides that the city:

"... shall be authorized to establish, fix, bill, and collect such rates and charges with respect to the property and users in the area served by the leased facilities as shall be sufficient to pay the costs of operation, maintenance, repair, alterations, depreciation, additions and extensions of the leased facilities, and to pay the lease rental as the same becomes due. Rates too low to meet the foregoing requirements shall be unlawful. Such rates and charges shall be subject to the jurisdiction of the public service commission of Indiana as to sufficiency of revenues therefrom for the foregoing purposes and as to whether the same are just and nondiscriminatory as between the classes of users solely in the area served by the leased facilities."

The PSC approved the metered rates established as authorized by the above statute. We cannot interpret this approval to mean the city, having the right to fix and collect water usage rates, was not entitled to measure the flow of water subject to those rates.

The homeowners protest that the installation of meters is an attempt to charge the homeowners with costs associated with the Laurel Woods subdivision in violation of the PSC order, *supra.* The homeowners do not substantiate this allegation. The city has shown no intention other than to charge its customers according to the rates approved by the PSC. The city is within its rights to install water meters for that purpose.[3] Accordingly, the trial court's entry of summary judgment is affirmed.

HOFFMAN, J., concurs.

STATON, P.J., concurs and files separate opinion.

city may install meters to charge the approved rates.

**2.** This section has since been repealed by Acts 1982, P.L. 74, Section 6.

**3.** We take no position on the validity of the city's proposed charge for the installation of the meters other than to say Paragraph 6 of the rules cannot be read to be an authorization of such a charge. That paragraph only requires the customer to provide, free of charge to the city, a suitable place for the meter.

STATON, Presiding Judge, concurring.

I concur with the majority. Here we are dealing with approved, measurable rates. It is implicit that a measuring device must be used to implement the approved rates. As to the jurisdiction argument, two statutory concepts must be kept in mind: "First, municipal utilities are not subject to the general grant of authority to the Commission. Second, those statutory provisions granting the Commission certain powers over municipal utilities are strictly construed." *Cities & Town of Anderson v. Public Service Commission of Indiana* (1979), Ind.App., 397 N.E.2d 303 at 307. The Appellants have failed to direct this Court to any statute which would support their jurisdictional argument. Any dissatisfaction with the rates approved in Cause No. 34737 and referred to in the Public Service Commission's approval of the lease agreement should have been made when the rates were filed.