TOWN OF MERRILLVILLE *v.* LINCOLN UTILITIES, INC.

[No. 2-474A92. Filed October 25, 1976.]

*Fred M. Cuppy, Gerald K. Hrebec, Thomas, Burke, Dyerly & Cuppy*, of Gary, for appellant.

*Porter R. Draper,* of Tulsa, Oklahoma, *Alan E. O'Connor,* of Gary, for appellee.

ROBERTSON, C.J.—The intervenor-appellant Town of Merrillville (Town) seeks review of an order from the Public Service Commission granting a certificate of territorial authority for sewage disposal service to the petitioner-appellee Lincoln Utilities, Inc. (Lincoln).

Because we find reversible error, the only issue to be discussed is:

> "Whether the Public Service Commission has statutory jurisdiction to grant a certificate of territorial authority when the sewage disposal treatment plant is located within the corporate limits of a municipality."

The record shows that Lincoln petitioned the Public Service Commission on August 1, 1973, for a certificate of territorial authority to render sewage disposal service in a rural area in St. John Township, Lake County, Indiana pursuant to IC 1971, 8-1-2-89 (Burns Code Ed.). The proposed service as applied for by Lincoln contemplated the collection of sewage in the Pine Island area, a rural area in St. John Township, and the transportation of such sewage to a sewage treatment plant located and owned by Lincoln within the corporate limits of the Town of Merrillville.[2]

The Town filed its petition to intervene on October 31, 1973. After a hearing, the Town's Petition to intervene was granted. Subsequently, on December 27, 1973, the Town moved to dismiss Lincoln's petition on the grounds that the Public Service

---

2. Lincoln operated two sewage treatment plants in Lake County pursuant to certificates of authority previously issued by the Commission. The other plant was located in and serviced a rural area known as the Rolling Hills Subdivision. Originally, Lincoln requested in its petition that the Commission extend the Rolling Hills certificate to include the Pine Island area. However, the parties stipulated at trial that the sewage collected in the Pine Island area would be treated in Lincoln's plant located in the Town of Merrillville because the Rolling Hills plant was subject to abandonment proceedings pending before the Commission.

Commission lacked statutory jurisdiction to grant the requested certificate because the service to be provided by Lincoln was not within a rural area. On March 22, 1974, the Commission denied the Town's motion to dismiss and issued an Order granting Lincoln a certificate of territorial authority to provide sewage disposal service for the petitioned area.

The Commission made the following findings relating to its jurisdictional authority:

"1. . . .

2. That Lincoln Utilities, Inc. is a corporation organized and existing under the laws of the State of Indiana with Corporate power and authority to own, operate and maintain a sanitary sewage disposal system and is a public utility subject to the jurisdiction of this Commission.

3. That Petitioner is presently rendering sewage disposal service in areas in Ross and St. John Townships, Lake County, Indiana, pursuant to Certificates of Territorial Authority previously issued by this Commission.

4. That Petitioner in this proceeding seeks a Certificate of Territorial Authority to render sanitary sewage disposal service in an area in St. John Township, Lake County, Indiana.

5. That Burns Ind. Stat. Ann. § 54-601c IC 8-1-2-89 provides as follows:

'It is hereby declared to be in the public interest to provide for the orderly development and rendering of sewage disposal service in rural areas within the State of Indiana and such public interest makes it necessary and desirable that to the extent provided herein the holding of a Certificate of Territorial Authority should be required as a condition precedent to the rendering of such service and that such operation be under the control, regulation and supervision of the Public Service Commission of Indiana and such sewage disposal company shall not be subject to regulation by any municipality or county government or metropolitan regulatory body or any branch or subdivisions thereof or substitute therefor in the form of special service districts with the exception that said sewage disposal company shall be subject to the comprehensive plan, zoning and subdivision require-

ments and regulations of the government unit having jurisdiction in the area; provided however that all functions powers and duties of the State Board of Health and the Stream Pollution Control Board shall remain unaffected by this section."

6. That it is this Commission's interpretation that the above stated statute confers upon the Public Service Commission of Indiana the jurisdiction over the control, regulation and supervision of rural sewage disposal companies.

7. That the only jurisdiction any other entity may have in regard to rural sewage disposal companies would be in regard to planning, zoning and subdivision requirements and regulations of government units having jurisdiction in the area and the powers and duties of the State Board of Health and Stream Pollution Control Board.

8. That the treatment plant of a rural sewage disposal need not be located within the certificated area which it serves.

9. That the location of Petitioner's sewage disposal treatment plant within the corporate boundaries of the Town of Merrillville, Indiana, does not confer upon the Town of Merrillville, Indiana, any jurisdiction over Petitioner other than that as set out in Finding No. 7 above.

10. That the area sought to be served by the Applicant in this cause is a "rural area" as that term is defined by Burns Ind. Stat. Ann. § 54-601c IC 8-1-2-89.

12. That the Commission has jurisdiction of the parties and the subject matter of this cause."

For the following reasons, we are of the opinion that Findings 8 and 12 are erroneous.

The Public Service Commission is a creature of the Legislature and derives its power to act solely from enabling statutes. Therefore, we must examine the applicable statutes to find the Commission's jurisdictional authority.

The Commission's authority to grant certificates of territorial authority for the rendering of sewage disposal services by sewage disposal companies is established in IC 1971, 8-1-2-89 (Burns Code Ed.) which in relevant part states:

(b) It is hereby declared to be in the public interest *to provide for the orderly development and rendering of sewage disposal service in rural areas within the state of Indiana,* and such public interest makes it necessary and desirable that to the extent provided herein the holding of a certificate of territorial authority should be required as a condition precedent to the rendering of such service, and that such operation be under the control, regulation and supervision of the public service commission of Indiana, and such sewage disposal companies shall not be subject to regulation by any municipality or county government or metropolitan regulatory body, or any branch or subdivisions thereof or substitute therefor in the form of special service districts, with the exception that said sewage disposal company shall be subject to the comprehensive plan, zoning, and subdivision requirements and regulations of the governmental units having jurisdiction in the area; Provided, however, That all functions, powers and duties of the state board of health and the stream pollution control board shall remain unaffected by this section.

(c) After the date that this section becomes effective [March 14, 1957], no sewage disposal company shall commence the rendering of sewage disposal service in any rural area in the State of Indiana in which it is not actually rendering sewage disposal service at the effective date hereof without first obtaining from the commission a certificate of territorial authority authorizing such sewage disposal service, finding that public convenience and necessity require such sewage disposal service within such rural area by such sewage disposal company, and defining and limiting specifically the rural area covered thereby. No sewage disposal company hereby required to hold such a certificate shall render any additional sewage disposal service within such rural area to any extent greater than that authorized by such certificate or shall continue to render sewage disposal service within such rural area if and after such certificate of territorial authority has been revoked or transferred as in this section provided, unless in such order of revocation or transfer the commission shall require continued service until a new sewage disposal company or municipality actually takes over such service. The commission shall not have the power to require extension of such service by any sewage disposal company into any additional territory than that defined and limited in such a certificate without the consent of such sewage disposal company.

(f) If, after notice of hearing and hearing on any application for a certificate of territorial authority, the commission shall find from the evidence introduced at such hearing, including any evidence which the commission shall have caused to be introduced as a result of any investigation which it may have made into the matter, that the applicant has proved the following things: (1) Lawful power and authority to apply for said certificate and to operate said proposed service; (2) financial ability to install, commence and maintain said proposed service; (3) *public convenience and necessity require the rendering of the proposed service in the proposed rural area by this particular sewage disposal company;* Provided, however, That in the event the service is proposed for a proposed rural real estate addition, division or development, or any part thereof, the reasonably expected sewage disposal service requirements of the anticipated residents may be found to constitute such public convenience and necessity; then the certificate of territorial authority, defining and limiting the rural area to be covered thereby, shall be granted to the applicant, subject to such terms, restrictions, limitations and conditions, including but not limited to a reasonable time in which to commence operations, as the commission shall determine to be necessary and desirable in the public interest. (Emphasis added.).

This statute gives the Commission exclusive jurisdiction and control over the development and rendering of "sewage disposal service" in "rural areas." Before the Commission may grant a certificate of authority for "sewage disposal service," subsection (f) requires that the Commission find that such service will be rendered in a "rural area" by a "sewage disposal company."

The terms "sewage disposal service," "sewage disposal company," and "rural area" are specifically defined in IC 1971, 8-1-2-89 (a) (Burns Code Ed.):

(1) The term "sewage disposal service" means any public utility service whereby liquid and solid waste, sewage, night soil and industrial waste of any single territorial area is collected, treated, purified and disposed of in a sanitary manner, and includes all sewage treatment plant or plants, main sewers, submain sewers, local and/or lateral sewers, intercepting sewers, outfall sewers, force mains,

pumping stations, ejector stations and all other equipment and appurtenances necessary or useful and convenient for the rendition of such service.

(2) The term "sewage disposal company" means any natural person, firm, association, corporation or partnership owning, leasing or operating any sewage disposal service within the rural areas of this state, and all provisions of this act [8-1-2-1—8-1-2-120] pertaining to a "public utility" shall apply with equal force and effect to a "sewage disposal company," except insofar as said provisions may be inconsistent with specific provisions of this section.

(3) The term "rural area" means territory lying within the state of Indiana and lying outside the corporate limits of a municipality.

The Town cogently argues, and we agree, that these statutory definitions, read as a whole, designate that all the facilities employed to provide "sewage disposal service," by a "sewage disposal company" in a "rural area" be located within a rural area.

The meaning of the pertinent sections of this statute is so plain and unambiguous we need not resort to the rules of statutory construction to arrive at our conclusion. *Ott* v. *Johnson* (1974), 262 Ind. 548, 319 N.E.2d 622; *State* v. *Gilbert* (1966), 247 Ind. 544, 219 N.E. 2d 892.

It is obvious that our Legislature intended to facilitate the development and rendering of sewage disposal services in rural areas by enacting this statute. It is equally as obvious that the Legislature intended that the treatment facilities for rendering sewage disposal service in rural areas be installed within the rural areas to be served.

By statutory definition, "sewage disposal service" includes all equipment necessary for the rendition of such service. A "sewage disposal company" by definition must "operate, lease or own any sewage disposal service *within the rural areas of this state.*" (Emphasis added).

Thus, it appears evident that a "sewage disposal company" must operate its facilities for sewage disposal in a territorial area lying outside the corporate limits of a municipality in order to qualify for a certificate of authority under IC 1971, 8-1-2-89 (Burns Code Ed.).

Subsection (j) of this statute is consistent with our interpretation. It contemplates the installation of "sewage disposal service" facilities to be in "rural areas".

> (j). *To encourage the installation of sewage treatment plants, and sewers, mains, stations, and all other equipment and appurtenances for rendering sewage disposal service in rural areas in close proximity to municipalities, and to insure that a sewage disposal company which had made such installation in such area* can recover the cost of its investment, in the event that the area or areas or any part thereof included within the territory granted under a certificate of territorial authority shall be annexed by any municipality at any time within twelve [12] years from the date that such certificate was granted, a sewage disposal company operating under such certificate shall continue to operate under such certificate of territorial authority, subject to the exclusive jurisdiction and regulation of the commission, for the unexpired portion of such period of twelve [12] years from the date of granting such certificate, or, in the case of a determinate permit specifying a term shorter than twelve [12] years, then for the unexpired portion of such lesser period as specified by such permit from the date of granting such permit; Provided, however, That the foregoing provisions in regard to continued operation within the corporate limits of a municipality after annexation shall not affect the right of the sewage disposal company to cease its operation of providing sewage disposal service within such annexed territory prior to the termination of said twelve [12] year or lesser determinate permit period, upon thirty [30] days written notice to the commission, the municipality, and all patrons. (Emphasis added.).

The Public Service Commission may only grant certificates of authority to those "sewage disposal companies" who propose to render a "sewage disposal service" *in* a "rural area" of this State. Since Lincoln intended to operate an integral part of its proposed "sewage

disposal service" within the corporate boundaries of the Town of Merrillville, the Commission was without authority to issue this certificate, and its order was contrary to law. To hold otherwise would circumvent the express meaning of the statute.

Accordingly, the Commission's Order of March 22, 1974, is hereby reversed, and this case is remanded for further proceedings consistent with this opinion.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 355 N.E.2d 851.