The CONCERNED CITIZENS OF WEST BOGGS LAKE, Appellants–Intervenors,

v.

WEST BOGGS SEWER DISTRICT, INC., and Office of Utility Consumer Counselor, Appellees–Petitioners.

No. 93A02–0308–EX–00738.

Court of Appeals of Indiana.

June 16, 2004.

Mark R. Waterfill, Cynthia M. Kirk, Dann Pecar Newman & Kleiman, Indianapolis, IN, Attorneys for Appellants.

Larry J. Wallace, Monica S. Doerr, Parr Richey Obremskey & Morton, Indianapolis, IN, David Waller, Waller Chambers & Hanson, Washington, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellants-intervenors, the Concerned Citizens of West Boggs Lake (Concerned Citizens) appeal the Indiana Utility Regulatory Commission's (IURC) grant of a Certificate of Territorial Authority[1] (CTA) to the appellee-petitioner, West Boggs Sewer District, Inc. (West Boggs) regarding its application to operate a sewage disposal facility. Concerned Citizens argues that granting the CTA was contrary to law because the proposed sewage disposal service was going to be operated in the town of Loogootee. In essence, Concerned Citizens maintains that West Boggs is prohibited from operating that type of business in the town because it would not be "owning" a treatment plant and, therefore, it could not qualify as a sewage disposal company. Moreover, Concerned Citizens urges that West Boggs is a mere collection system and does not qualify as a "sewage disposal company" in accordance with Indiana law. Concluding that West Boggs's plan to operate a sewage disposal facility was in conformance with relevant statutory authority, we affirm the judgment of the IURC.

## FACTS

On January 10, 2002, West Boggs filed a verified application with the IURC re-

---

1. In accordance with Indiana Code section 8–1–2–89, the issuance of a CTA is a prerequisite for the rendering of sewage disposal service in Indiana.

questing the issuance of a CTA and an "indeterminate permit"[2] to provide sewage disposal service to certain rural areas of Daviess and Martin counties. West Boggs also sought approval of initial rates, charges, tariffs, rules and regulations for that service. Paragraph two of the application provided that: "Sewage from the area for which a CTA is requested will be collected and transported to the City of Loogootee by a force main that will discharge into that city's waste water collection and treatment system for treatment and disposal." Appellant's App. p. 27–28. The proposed service area was to be constructed around West Boggs Lake that covers approximately 625 acres. Appellant's App. p. 215. However, it was uncontradicted that the waste would flow to Loogootee's municipal sewage treatment plant for disposal and discharge into that city's wastewater collection and treatment system for further treatment and ultimate disposal.

It was also determined that West Boggs would operate its proposed sewage disposal system within a rural area. The system would reduce solids within wastewater by grinders at the customers' premises and at lift stations, and the wastewater would be transported by force mains to a connection point in Daviess County, outside the corporate limits of Loogootee. From this particular connection point, the wastewater would flow to Loogootee's wastewater treatment plant for ultimate disposal. Hence, the facilities would be in rural areas of Martin and Daviess Counties, and West Boggs would have no sewage disposal facilities within the corporate limits of any municipality. It was also established that the construction of a sanitary sewer system would mitigate raw sewage and

other pollutants from entering West Boggs Lake.

On March 14, 2003, the Concerned Citizens filed a motion to intervene and moved to dismiss West Boggs's application. Concerned Citizens argued that the application had to be dismissed because the proposed system was not a "rural sewer" as is required by Indiana law. Appellant's App. p. 103. More specifically, Concerned Citizens maintained that the proposed facilities failed to meet the definition of "sewage disposal service" and "sewage disposal company" as set forth in Indiana Code section 8–1–2–89. Put another way, Concerned Citizens argued that the CTA could not be issued because West Boggs was going to conduct the actual treatment of sewage within a municipality rather than in a rural area. After several hearings, the IURC denied Concerned Citizens's motion to dismiss and granted West Boggs's application for the CTA. In the end, the IURC determined that it was not necessary for West Boggs to perform *all* of the services or own all of the facilities included in the statutory definition of "sewage disposal service." Appellant's Br. p. 17 (emphasis added). Concerned Citizens now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Judicial review of an agency decision is limited to determining whether the agency possessed jurisdiction of subject matter, whether the decision was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory, or legal principle. *Rynerson v. City of Franklin,* 669 N.E.2d

---

2. Ind.Code § 8–1–2–1(i) involves a grant from this State to another—as defined in that statute—to collect, treat, and dispose of waste.

The relevant portion of the statute is set forth in its entirety on page eight of this opinion.

964, 971–72 (Ind.1996). While the interpretation of a statute is a question of law for the courts, the interpretation given to statutes or administrative rules and regulations by an administrative agency charged with the duty of enforcing those statutes and regulations is entitled to great weight. *Partlow v. Indiana Family & Soc. Servs. Admin.*, 717 N.E.2d 1212, 1214 (Ind.Ct. App.1999). With regard to statutory interpretation, the meaning and intention of the legislature is to be ascertained not only from the specific phraseology of a statute but also by considering design, nature, and the consequences that flow from the various interpretations. *Allen County Dep't of Pub. Welfare v. Ball Memorial Hosp.*, 253 Ind. 179, 252 N.E.2d 424, 427 (1969). Put another way, when construing the meaning of a statute, it is the court's objective to ascertain and give effect to the legislative intent and to interpret the statute in such a manner as to prevent absurdity and to advance public convenience. *KPMG, Peat Marwick, LLP v. Carmel Financial Corp., Inc.*, 784 N.E.2d 1057, 1060 (Ind.Ct.App. 2003).

Additionally, we will consider whether an agency's decision is supported by specific findings of fact and sufficient evidence, and second, whether the decision is contrary to law. *Knox County Rural Elec. Membership Corp. v. PSI Energy, Inc.*, 663 N.E.2d 182, 189 (Ind.Ct.App. 1996), *trans. denied.* We note that a decision will be deemed contrary to law when the IURC fails to stay within its jurisdiction and abide by the statutory and legal principles that guide it. *Id.*

## II. Concerned Citizens' Claims

■ In urging that the grant of the CTA to West Boggs was contrary to law, Concerned Citizens points to Indiana Code section 8–1–2–89(a)(2), which provides that a sewage disposal company must "operate, lease or own any sewage disposal service within the rural areas of this state." Moreover, Concerned Citizens relies on this court's holding in *Town of Merrillville v. Lincoln Utilities, Inc.*, 171 Ind.App. 224, 355 N.E.2d 851 (1976), where we observed that "the Public Service Commission may only grant certificates of authority to those 'sewage disposal companies' who propose to render a 'sewage disposal service' in a 'rural area' of this State." *Id.* at 856. Concerned Citizens goes on to maintain that West Boggs does not qualify as a "sewage disposal company" and, therefore, it was not eligible for the issuance of a CTA to render "sewage disposal services." Because West Boggs does not own, lease or operate a sewage disposal company, nor does it intend to do so—says Concerned Citizens—the issuance of the CTA was contrary to law.

In resolving Concerned Citizens's challenges to the issuance of the CTA, we first note that a stated policy objective set forth in Indiana Code section 8–1–2–89 is to encourage "the orderly development and rendering of sewage disposal service in rural areas of the state of Indiana." That said, we turn to other relevant provisions of Indiana Code section 8–1–2–89. In defining the various terms used throughout the statute, subsection (a) begins as follows: "As used in this section, *unless the context otherwise requires,* the following terms have the following meanings:"

(1) 'Sewage disposal service' means any public utility service whereby liquid and solid waste, sewage, night soil, and industrial waste of any single territorial area is collected, treated, purified, and disposed of in a sanitary manner, and includes all sewage treatment plant or plants, main sewers, submain sewers, local and lateral sewers, intercepting sewers, outfall sewers, force mains, pumping stations, ejector stations, *and all*

*other equipment and appurtenances
necessary or useful and convenient
for the rendition of such service.*

   (2) 'Sewage disposal company' means any natural person, firm, association, corporation, or partnership owning, leasing, or operating any sewage disposal service within the rural areas of this state, and all provisions of this chapter pertaining to a public utility shall apply with equal force and effect to a sewage disposal company, except insofar as said provisions may be inconsistent with specific provisions of this section.

(Emphasis supplied).

We also note a companion statute, which deals with the issuance of indeterminate permits, provides as follows:

   (i) 'Indeterminate permit', as used in this chapter, means every grant directly or indirectly form the state, to any corporation, company partnership, limited liability company, individual, association of individuals, their lessees, trustees, or receivers appointed by a court, of power, right, or privilege to own, operate, manage, or control any plant or equipment, or any part of a plant or equipment, within this state, for the:

   . . .

   (3) collection, treatment, purification, and disposal in a sanitary manner of liquid and solid waste, sewage, night soil, and industrial waste.

I.C. § 8–1–2–1(i).

   ■ In considering these statutory provisions, it is apparent that Concerned Citizens's primary focus is upon the notion that West Boggs *must* own or lease, and operate, each and every component of all of the facilities utilized in the process by which it disposes of waste. However, it is reasonable to conclude that the legislature

intended that the definitions contained in the statutes should be applied in a flexible manner. Otherwise, the phrases set forth in the statutes, "unless the context otherwise requires" and "all other equipment necessary or useful and convenient for the rendition of such service" would not have been included.

Notwithstanding these statutory provisions, Concerned Citizens directs us to the following language in *Town of Merrillville* in support of its position:

The proposed service as applied for by Lincoln contemplated the collection of sewage in the Pine Island, a rural area in St. John Township, and the transportation of such sewage to a sewage treatment plant located and owned by Lincoln within the corporate limits of the Town of Merrillville.

The Town filed its petition to intervene on October 31, 1973. After a hearing, the Town's Petition to intervene was granted. Subsequently, on December 27, 1973, the Town moved to dismiss Lincoln's petition on the grounds that the Public Service Commission lacked statutory jurisdiction to grant the requested certificate because *the service to be provided by Lincoln was not within a rural area.* On March 22, 1974, the Commission denied the Town's motion to dismiss and issued an Order granting Lincoln a certificate of territorial authority to provide sewage disposal service for the petitioned area.

355 N.E.2d at 852 (emphasis added).

After the Commission had granted the CTA to the petitioner in *Town of Merrillville,* this court reversed and observed:

It is obvious that our Legislature intended to facilitate the development and rendering of sewage disposal services in rural areas by enacting this statute. It is equally as obvious that the Legislature intended that the treatment facili-

ties for rendering sewage disposal service in rural areas be installed within the rural areas to be served.

*Id.* at 855. We went on to note that:

The Public Service Commission may only grant certificates of authority to those 'sewage disposal companies' who propose to render a 'sewage disposal service' in a 'rural area' of this State. *Since Lincoln intended to operate an integral part of its proposed 'sewage disposal service' within the corporate boundaries of the Town of Merrillville, the Commission was without authority to issue this certificate, and its order was contrary to law.* To hold otherwise would circumvent the express meaning of the statute.

*Id.* at 856 (emphasis added).

■ When focusing upon the rationale espoused in *Town of Merrillville*, it is apparent to us that a sewage disposal company should not locate its own treatment facilities inside the corporate limits of a municipality if it is to be certain to qualify for a CTA in accordance with Indiana Code section 8–1–2–89. Unlike the circumstances in *Town of Merrillville*, West Boggs proposed in its application that it was going to locate all of its facilities outside the corporate limits of a municipality. Thus, Concerned Citizens misses the mark and the limitations set forth in *Town of Merrillville* do not preclude the IURC from issuing a CTA to West Boggs.

Additionally, Concerned Citizens directs us to Cause No. 38685, which was an order handed down by the IURC in 1990 that denied a motion to revoke Hamilton Southeastern Utilities's (Utilities) CTA that had been previously issued to it. In support of its position that a CTA should not have been issued to West Boggs, Concerned Citizens points to the following language in that order:

The uncontroverted evidence of record is that Hamilton–Southeastern is merely collecting sewage to be treated by the Town of Fishers. It appears to the Commission that rendering of this type of service is more clearly not within the intent of the [...] CTA statute than the situation described in *Merrillville.* ... The Commission finds that the service contemplated by Hamilton–Southeastern is not a sewage disposal service in a rural area. To find otherwise would result in the Commission giving no weight to the Court of Appeals' decision in *Town of Merrillville.*

Appellant's Br. p. 7. While this order may seem compelling, Concerned Citizens—in its next breath—points out that the IURC later reversed its original decision and, in fact, reinstated the Utilities's CTA. Appellant's App. p. 18. Moreover, a number of subsequent orders issued by the IURC granted the Utilities's requests for territorial expansion and for expansion of the very CTA that was confirmed by the IURC in the 1990 order in at least six instances. To be sure, the IURC has previously granted CTA's to entities that collect sewage but then have forwarded the waste on to another entity for treatment. Significantly, in September 2002, in Cause No. 41752, a motion to dismiss was filed that was very similar to that which was filed in this case. That order, which resulted in the expansion of the Utilities's CTA, withstood the motion to dismiss where it complained of the same jurisdictional defects that were made by Concerned Citizens here. Specifically, the IURC found that "all parties to this proceeding stipulate and agree that it is in the public interest for the [Utilities] to render sewage disposal service in the new CTA." The IURC also declared that:

In paragraph 4 above, evidence establishing [the Utilities's] lawful ability to obtain a[CTA] is identified. In granting

the new CTA, the Commission acknowledges that [the Utilities] meet all the requirements for a CTA established in IC 8–1–2–89. Therefore, [the Utility] meets the statutory requirements for having the Flatfork CTA transferred to it.

Appellee's App. p. 63.

In this instance and others, the IURC has granted CTA's and indeterminate permits to other sewage disposal companies. In the context of such findings and orders issued by the IURC, as well as the objectives set forth by our legislature, the definition of a "sewage disposal service" should not be so narrowly construed as to require that each and every component of services or facilities listed in the definition must be solely owned and operated by an entity before it can qualify as a "sewage disposal company" within the meaning of Indiana Code section 8–1–2–89. Put another way, to interpret the definition of "sewage disposal service" to exclude from the definition a company that provides essential aspects of sewer utility service, such as a collection system and lift stations, while contracting for the final treatment of the waste by a municipality or other utility that already has a treatment plant, would simply result in a hardship and absurdity that should be avoided. For these reasons, we affirm the IURC's grant of the CTA and indeterminate permit to West Boggs.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.