**BLOOMINGTON COUNTRY CLUB, INC., Lead Appellant,**

**Namron L.L.C., Norm Deckard; Bruce's Marathon, Inc., d/b/a Winslow Road Marathon; Monroe Bank; Gerad Yeagley; Richard Rechter; Lee Merchant; Greg Sutliff; Steve Hedback; and Tim Ellis, Appellants/Cross-Appellees,**

v.

**CITY OF BLOOMINGTON WATER & WASTEWATER UTILITIES, Appellee/Cross-Appellant,**

**Indiana Office of Utility Consumer Counselor, Cross/Appellee.**

No. 93A02–0410–EX–865.

Court of Appeals of Indiana.

May 31, 2005.

Robert Delano Jones, Jones, McGlasson & Benckart, P.C., Bloomington, IN, Attorney for Appellants.

Adam Arceneaux, Brian E. Bailey, Ice Miller, Indianapolis, IN, Attorneys for Appellee, City of Bloomington Water & Wastewater Utilities.

Susan L. Macey, Randall C. Helmen, Daniel M. Le Vay, Office of Utility Consumer Counselor, Indianapolis, IN, Attorneys for Appellee, Indiana Office of Utility Consumer Counselor.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Bloomington Country Club and ten co-petitioners (collectively, "Country Club") appeal the order of the Indiana Utility Regulatory Commission ("IURC") that denied their request for injunctive relief, finding that the irrigation rate it had approved for City of Bloomington Water & Wastewater Utilities ("Utilities") was being properly applied. Utilities cross-appeals the IURC's denial of its motion to dismiss.

We affirm.

### ISSUES

1. Whether the IURC erred in denying Utilities' motion to dismiss Country Club's petition because it was untimely and the IURC lacked jurisdiction.

2. Whether the IURC erred in its determination that Utilities had properly applied the irrigation rate.

3. Whether the IURC erred when it granted Utilities' motion to strike a portion of rebuttal testimony.

### FACTS

On September 10, 2001, Utilities filed a petition with the IURC to finance additions and improvements to its waterworks. The matter was identified as IURC Cause No. 42083, and review by the IURC was scheduled. In a parallel action in late 2001, Bloomington's City Council considered and then approved an ordinance that

increased Utilities' water rates and charges, including the enactment of an irrigation rate. The IURC received evidence submitted by Utilities in support of its proposed rates in Cause No. 42083 and held a public evidentiary hearing. On May 15, 2002, the IURC issued its order approving Utilities' request to issue revenue bonds to finance additions and improvements for Utilities and to increase its water rates and charges. On June 7, 2002, the IURC approved Utilities' new schedule of rates and charges, including the irrigation rate. The approved schedule included monthly charges per 1,000 gallons at the residential rate of $1.91, the commercial rate of $1.61, and the irrigation rate of $2.76. Thereafter, Utilities billed customers having a separate meter for irrigation water at the irrigation rate for the water flowing through that meter.

Almost a year after the IURC action, on May 21, 2003, Country Club filed a petition with the IURC asserting "that the application by [Utilities] ... of its 'irrigation' water rate is unreasonable and unjustly discriminatory" because it was only charging the irrigation rate to customers with "separate meters for irrigation purposes." (Country Club's App. 126). Country Club sought an injunction requiring Utilities "to cease immediately in using the irrigation rate." *Id.* at 133. Utilities filed a motion to dismiss, arguing that "[t]he time to contest the Irrigation Rate has long since expired" because the statutory period for challenging an IURC order is thirty days "from the date of entry of such decision, ruling, or order...." (Utilities' App. 7, quoting Ind.Code § 8–1–3–1). Utilities noted that Country Club had not participated in the City Council's consideration of the ordinance or the IURC's consideration of the petition in Cause No. 42083, and that it had not appealed the order approving the irrigation rate. Utilities also argued that the IURC lacked jurisdiction to grant Country Club's request that it investigate the reasonableness of the irrigation rate that had previously been properly approved.

In ruling on Utilities' motion to dismiss, the IURC noted that Country Club's petition did not challenge its "rate order but instead is challenging the subsequent application of the Irrigation Rate in a manner [Country Club] alleges is unjustly discriminatory." (Country Club's App. 46). Accordingly, the IURC denied Utilities' motion to dismiss and stated that it would undertake a review to "determine whether [Utilities'] application of the Irrigation Rate is consistent with the Commission's Rate Order and the evidence upon which that order is based, as presented in Cause No. 42083." *Id.* at 47.

Both Country Club and Utilities prefiled testimony evidence with the IURC. The IURC held an evidentiary hearing on January 15, 2004. For Country Club, its controller and golf course superintendent and its consultant (Richard Kent) appeared, and their prefiled testimony was admitted. Their testimony was that Country Club's water costs had increased greatly after application of the irrigation rate, and that other water customers who did not have a separate water meter were not charged the irrigation rate for their use of water to irrigate. For Utilities, the following were admitted: prefiled testimony of Ann Bui of Black & Veatch; 2001 cost of service report by Black & Veatch admitted in Cause No. 42083; testimony of Peggy Howe of Black & Veatch before the IURC in Cause No. 42083; a 2002–03 comparison of charges with and without the irrigation rate; prefiled testimony of Margaret Dalle–Ave, assistant director-finance of Utilities; the IURC's order approving the rates and charges in Cause No. 42083; and the IURC-approved tariff of rates and charges. Utilities moved to strike a por-

tion of rebuttal testimony proffered by Country Club challenging some of the evidence submitted by Utilities in Cause No. 42083; the IURC granted the motion to strike the portion of the rebuttal testimony. Finally, testimony by an analyst with the Office of Utility Consumer Counselor ("OUCC") was received.

On September 8, 2004, the IURC issued its order.[1] It noted the testimony by the OUCC witness that the water flowing through the Country Club's irrigation meter was "being correctly billed at the irrigation rate." (Country Club's App. 7). It further noted Bui's testimony that the irrigation rate was "being correctly applied to the Petitioners" because petitioners had "separate meters used for irrigation," and that the Brown & Veatch report submitted as evidence in Cause No. 42083 had defined the proposed new "irrigation" class as customers "hav[ing] metered sprinkler or irrigation systems." *Id.* at 8. This report had further stated that the demand characteristics for irrigation users differed "significantly," leading to the proposal in Cause No. 42083 of "a separate charge recognizing the cost of serving these customers." *Id.* The IURC cited testimony in Cause No. 42083 as to how "cost of service allocation procedures" had been employed in establishing the irrigation rate. *Id.* It noted Bui's testimony that the irrigation rate "benefits the irrigation class because those customers would otherwise be billed at the commercial rate which would include an additional charge for wastewater services," and evidence that Country Club's costs would be greater "if all of its water usage was billed at the commercial

rate" with its accompanying wastewater charges. *Id.* The IURC order then found that "the Petitioners are included in the irrigation class since they have separate meters for irrigation" and that as "members of the irrigation class," they were "properly being charged the Irrigation Rate by [Utilities] for water flowing through Petitioners' irrigation meters." *Id.* at 9. Accordingly, the IURC denied Country Club's request that it order Utilities to immediately cease using the irrigation rate.[2]

## DECISION

### 1. *Motion to Dismiss*

■ We consider first Utilities' claim that the trial court erred in denying its motion to dismiss. According to Utilities, the IURC lacked subject matter jurisdiction to address Country Club's petition because Country Club failed to file an appeal within the statutory thirty-day period and Country Club "necessarily appeals the very enactment of" the irrigation rate in Cause No. 42083. Utilities' Br. at 14. This argument fails to acknowledge the IURC's express goal on review here: to determine whether Utilities was applying the irrigation rate consistent with the evidence presented and the order thereon in Cause No. 42083.

■ Utilities further claims that the IURC lacks "jurisdiction to investigate the already adopted rates and charges of a municipally owned utility." *Id.* at 18. *Inter alia*, Utilities argues that Indiana Code § 8-1-2-68 does "not apply to municipally

---

1. We direct Country Club to the requirement that appellate *brief* "shall include any written opinion, memorandum or decision or findings of fact and conclusions thereon relating to the issues raised on appeal." Ind. Appellate Rule 46(A)(10).

2. The order found that in one particular, specifically water flowing through the non-irrigation meter for use in Country Club's swimming pool, the irrigation rate was being improperly charged. Because this finding is not an issue in Country Club's appeal, it is not discussed.

owned utilities such as" Utilities because it (1) contains no express grant to the IURC of "the authority to initiate an investigation," and (2) applies only to violations of provisions of Chapter 2 of Title 8, while Chapter 1.5 of Title 8 governs municipally owned utilities. *Id.* at 20, 21.

The statutory provision reads as follows:

Whenever, upon an investigation, the commission shall find any rates, tolls, charges, schedules or joint rate or rates to be unjust, unreasonable, insufficient, or unjustly discriminatory, or to be preferential or otherwise in violation of any of the provisions of this chapter, the commission shall determine and by order fix just and reasonable rates, tolls, charges, schedules, or joint rates to be imposed, observed, and followed in the future in lieu of those found to be unjust, unreasonable, insufficient, or unjustly discriminatory or preferential or otherwise in violation of any of the provisions of this chapter.

I.C. § 8–1–2–68. As the OUCC notes in its brief addressing Utilities' argument, the provision itself "contains no reference to 'public utilities.'" OUCC's Br. at 3. Moreover, because the provision authorizes the IURC to act "upon an investigation" that leads to certain findings, we agree with the OUCC's assertion that the power to initiate such an investigation "is implied." *Id.* at 4. A subsequent section provides for payment of the IURC's expenses "upon any investigation made under the provisions of this chapter, either upon complaint *against any municipal utility,* or upon the petition of such municipal utility...." I.C. § 8–1–2–70. Essentially, pursuant to Utilities' interpretation, the statute would provide for payment to conduct such an investigation as to a municipal utility but not the authority to either initiate the investigation or address a finding of impropriety. As the OUCC observes, if the IURC did not have the authority to initiate the investigation described in I.C. 8–1–2–68 and then "determine and by order fix" the rate for future practice, *id.*, its authority to demand payment for the expenses of the investigation "upon complaint against any municipal utility, or upon the petition of any such municipal utility" would be a nullity. "Courts will not construe a statute in a manner that will render another a nullity." *City Securities v. Dept. of State Revenue,* 704 N.E.2d 1122, 1126 (Ind.Tax 1998). A reading of the provisions together leads to the conclusion that the IURC has been granted the power to *initiate* an investigation as to whether a rate is "unjust, unreasonable, insufficient, or unjustly discriminatory" along with its power to issue an order addressing such a finding and to order payment for the expense of its investigation.

Moreover, such a conclusion is consistent with the undisputed authority of the IURC to approve the rates being applied by Utilities and the gravamen of Country Club's petition. Country Club stated that it was not bringing a "substantive[ ] challenge" to the irrigation rate but rather challenging Utilities' "application of the irrigation rate." (Country Club's App. 129). The statutory provision between the two above-discussed sections provides that if an IURC investigation finds "practices ... to be unjust, unreasonable, ... preferential" or "unjustly discriminatory," it "shall determine and declare and by order fix just and reasonable ... practices ... to be ... followed in the future...." I.C. § 8–1–2–69. It seems that an investigation as to whether the approved rates were being applied consistent with the evidence leading to the approval of those rates falls within the contemplated purview of this provision. Again, we note that the immediately succeeding statutory provision is

that authorizing payment of expenses for a "complaint against any municipal utility," I.C. § 8–1–2–70, which leads us to conclude that such payment is authorized because the IURC also holds the power to conduct an investigation upon a complaint against a municipal utility. Given the statutory provisions discussed, to hold that the legislature did not grant to the IURC the authority to investigate the municipal utility's application of rates which it had approved would produce an absurd result, and a statute "is to be construed so as to not bring about an absurd result." *Citizens Action Coalition of Ind. v. Northern Indiana Public Service Co.*, 796 N.E.2d 1264, 1269 (Ind.Ct.App.2003), *trans. denied.* Therefore, we find that the IURC did not err in denying Utilities' motion to dismiss Country Club's petition for lack of jurisdiction.

2. *Utilities' Application of Irrigation Rate*

■ On the appeal of an IURC order, we consider "whether it is supported by specific findings of fact and by sufficient evidence, as well as to determine whether the order is contrary to law." *Indiana Bell Telephone Co., Inc. v. Indiana Utility Regulatory Comm'n*, 810 N.E.2d 1179, 1184 (Ind.Ct.App.2004), *trans. denied.* On matters within its discretion, the IURC enjoys wide discretion. *Id.* Its findings and decision will not be lightly overridden just because the appellate court might reach a contrary opinion on the same evidence. *Id.* In order for the appellate court to vacate the IURC's order, the appellant "must demonstrate that the order either lacks a factual basis or is contrary to law." *Id.*

■ Country Club's appellate arguments essentially challenge the IURC's conclusion that Utilities "ha[d] been properly applying the Irrigation Rate in accor-

dance with the Order and evidence presented in Cause No. 42083." (Country Club's App. 9). To reach this conclusion, the IURC first found that Country Club and its co-petitioners were properly "included in the irrigation class since they have separate meters for irrigation." *Id.* However, Country Club asserts that there "are no unique characteristics of the irrigation class that justify the use of the irrigation rate." Country Club's Br. at 6. This argument fails to acknowledge the evidence originally presented to the IURC with the proposed rate. Specifically, as noted in the IURC's order, the report submitted in Cause No. 42083 considered evidence that "demand characteristics for irrigation users differ[ed] significantly from residential and commercial customers," for which "a separate charge recognizing the cost of serving these customers [wa]s proposed," and that this proposed rate would apply to a "new classification" or "customer class" that consisted of those having "metered sprinkler or irrigation systems." (Tr. 141). Hence, evidence supports the IURC's finding that irrigation customers with a separate meter had demand characteristics different than that of Utilities' other customers.

■ Country Club also argues that the irrigation class is a "faulty classification[ ] upon which no rate can be applied justly and nondiscriminately." Country Club's Br. at 11. However, this argument challenges the original action of the IURC in Cause No. 42083. The irrigation class was defined in the evidence submitted to the IURC in that matter. As the IURC made clear when it denied Utilities' motion to dismiss and in the current order, the instant proceedings were not "an investigation of [Utilities'] water rates." (Country Club's App. 6).

■ Country Club argues that "utility rates generally should apply equally

among all utility customers." Country Club's Br. at 9. We agree, and we find this policy expressed in the statutory provision requiring municipal utility rates to be rendered in a "nondiscriminatory, reasonable, and just" manner. I.C. § 8–1.5–3–8. As noted above, the evidence presented in Cause No. 42083 was that the demands for water differed significantly for customers with a separate meter for irrigation when compared to the demands of other customers. Hence, Utilities proposed and the IURC approved a separate irrigation rate to be applied to those customers with a separate meter for irrigation. The evidence is undisputed that Country Club and its co-petitioners have such separate meters and that they are being charged at the approved irrigation rate for water flowing through those separate meters. Therefore, the rate is being applied equally to all customers in the irrigation class, as proposed in the evidence submitted to the IURC in Cause No. 42083.

■ Finally, Country Club argues that the IURC's conclusion cannot stand because Utilities' application of the irrigation rate violates the Equal Privileges and Immunities Clause, Article 1, Section 23 of the Indiana Constitution. We disagree.

■ The privileges and immunities clause prohibits granting to a "citizen, or class of citizens, privileges or immunities, which upon the same terms, shall not equally belong to all citizens." IND. CONST. art. 1, § 23. The requirements of the clause "govern not only state statutes, but also the enactments and actions of county, municipal, and other governmental agencies and their equivalents." *Dvorak v. City of Bloomington,* 796 N.E.2d 236, 238 (Ind.2003). Claims that actions violated the clause are subject to a two-part test. *Sims v. U.S. Fidelity & Guar. Co.,* 782 N.E.2d 345, 353 (Ind.2003). First, the disparate treatment accorded by governmental action must be reasonably related to inherent characteristics, which distinguish the unequally treated classes. *Id.* Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.* In determining whether a governmental action violates the clause, courts must exercise substantial deference to the discretion of the governmental entity taking the action. *Id.* Further, the burden "is on the challenger 'to negative every conceivable basis which might have supported the classification.' " *Id.* (quoting *Collins v. Day,* 644 N.E.2d 72, 81 (Ind.1994)).

Country Club argues that its disparate treatment "was not reasonably related to the inherent characteristics that distinguish between the irrigation class and other rate classes." Country Club's Br. at 13. It cites testimony about how only customers with the separate irrigation meter are charged the irrigation rate. But it fails to acknowledge the IURC's reliance on the evidence of these customers' differing demand characteristics. In Cause No. 42083, evidence was submitted showing that based on the analysis of water billing data for a one-year period, the customers with separate irrigation meters had different water needs. Further evidence indicated that the cost-of-service for this differing usage had been taken into account when proposing the new irrigation rate. Accordingly, the evidence supports the conclusion that the disparate treatment of being charged an irrigation rate is reasonably related to the inherent characteristics shown in the evidence submitted in Cause No. 42083 to distinguish the irrigation class from the other classes.

Country Club also argues that its preferential treatment—being charged the irrigation rate that is not accompanied by wastewater charges—is not uniformly available to all, in that other customers are

charged the wastewater fee for the water they use to irrigate. As Utilities correctly responds, this is true because the other customers lack the separate irrigation meter. Further, the evidence indicated that Country Club itself could abandon its separate irrigation meter and have all of its water delivered through a single meter, in which case it would be charged the regular water rate *and* the wastewater fee—with a resulting total bill that would be dramatically greater than its current charges with application of the separate irrigation rate. Moreover, the "preferential treatment" that Country Club challenges—being charged the irrigation rate for water flowing through its separate irrigation meter—is a "treatment . . . uniformly applicable and equally available to all" customers who choose to install the separate irrigation meter and become "similarly situated." *Sims,* 782 N.E.2d at 353.

Country Club has failed to demonstrate that the IURC's order denying Country Club's petition for injunctive relief "either lacks a factual basis or is contrary to law." *Indiana Bell,* 810 N.E.2d at 1184.

### 3. *Exclusion of Evidence*

We review a decision to exclude evidence for an abuse of discretion, which occurs only when that decision "is clearly against the logic and effect of the facts and circumstances." *Lake County Parks and Recreation Board v. Indiana–American Water Co., Inc.,* 812 N.E.2d 1118, 1124 (Ind.Ct.App.2004).

County Club argues that the trial court erred in granting Utilities' motion to strike portions of the rebuttal testimony of its utility consultant, Richard Kent, after Utilities' motion asserted that the testimony was irrelevant. Country Club asserts that the initial portion of stricken testimony was properly admissible because the initial ruling of the IURC found that the purpose before them was to determine whether [Utilities'] application of the Irrigation Rate was consistent with the IURC's Rate Order and related tariff, *and the evidence upon which that Order is based.*

Country Club's Br. at 20 (emphasis added by Country Club). Unfortunately, the foregoing fails to complete the IURC's statement in its order denying Utilities' motion to dismiss, to wit:

> . . . a hearing should be convened to determine whether [Utilities'] application of the Irrigation is consistent with the Commission's Rate Order and the evidence upon which that order is based, *as presented in Cause No. 42083.*

(Country Club's App. 47, emphasis of omitted portion).

Country Club argues that in the stricken testimony, its witness, Kent, was only responding to testimony by Bui before the IURC on January of 2004, as to the contents of testimony by Howe before the IURC during Cause No. 42083 about how the proposed irrigation class was defined based upon the Black & Veatch study and report. Essentially, Country Club sought in its witness' 2004 testimony to challenge the evidence originally submitted in Cause No. 42083. Because the IURC had determined that it would only consider whether Utilities was properly applying the rate approved based upon the unchallenged evidence it had already heard in 2002 in Cause No. 42083, the testimony of Country Club's witness in this regard was not relevant. *See* Ind. Evidence Rule 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

In addition, Country Club argues that the second portion of its consultant witness' testimony answering the question of whether Utilities' "application of the irrigation rate [had] been in accordance with the" order in Cause No. 42083 was improperly stricken. True, this is the issue being considered by the IURC in January of 2004, but the witness' answer was his opinion as to the legitimacy and value of the evidence presented in Cause No. 42083 to seek approval of the irrigation rate. Therefore, it was not an abuse of discretion for the IURC to exclude this testimony as irrelevant.

Affirmed.

MATHIAS, J., and CRONE, J., concur.