# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**PETER S. KOVACS**
Stewart & Irwin, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES VEOLIA
WATER INDIANAPOLIS, LLC and
VEOLIA WATER NORTH AMERICA
OPERATING SERVICES, LLC:

**ROBERT D. MacGILL**
**T. JOSEPH WENDT**
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE CITY OF
INDIANAPOLIS, DEPARTMENT OF
WATERWORKS:

**KARL L. MULVANEY**
**BRIAN W. WELCH**
**CARL A. HAYES**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LESLIE BRIDGES, individually and as Class Representative of all those similarly situated, | ) ) ) | |
| Appellant-Plaintiff, | ) ) | |
| vs. | ) ) | No. 49A02-1112-CC-1097 |
| VEOLIA WATER INDIANAPOLIS, LLC, VEOLIA WATER NORTH AMERICA OPERATING SERVICE, LLC, and THE CITY OF INDIANAPOLIS, DEPARTMENT OF WATERWORKS, | ) ) ) ) ) ) | |
| Appellees-Defendants. | ) | |

**November 1, 2012**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

After Veolia Water twice turned her water off for non-payment, appellant Leslie Bridges filed a class action seeking return of her $25 reconnection fee and other unspecified damages and attorney's fees. The trial court dismissed, concluding that Bridges had failed to exhaust the administrative remedies available at the Indiana Utilities Regulatory Commission. We conclude that the trial court was correct to hold that Bridges was obliged to seek those remedies before seeking judicial relief.

**FACTS AND PROCEDURAL HISTORY**[1]

In or about March of 2002, the City of Indianapolis, Department of Waterworks (the "Department") acquired the waterworks assets of IWC Resources Corporation. In acquiring the waterworks assets, the Department explicitly agreed that it would remain subject to the jurisdiction of the Indiana Utility Regulatory Commission ("IURC") for purposes of rates and charges, and that it would operate the waterworks systems in accordance with the IURC's rules of service. The purchase was approved by the IURC on March 28, 2002 (the "2002

---

[1] We heard oral argument in this matter on October 11, 2012, and wish to thank counsel for their presentations.

Order"). The 2002 Order reiterated that the Department would remain subject to the IURC's jurisdiction for purposes of rates and charges and that the Department would operate the waterworks systems in accordance with the IURC's rules of service.

The Department is a municipal water utility. Veolia Water Indianapolis, LLC and Veolia Water North America Operating Service, LLC (collectively, "Veolia") is an independent contractor who, at all times relevant to this appeal, managed and operated all water treatment and distribution facilities owned by the Department. Under the terms of its contract, Veolia managed and operated all meter reading, billing, and collection functions. Veolia was responsible for handling all customer complaints and service requests. Veolia was also responsible for performing any disconnection of residential water service for nonpayment.

The services provided to residential customers by Veolia were governed by a tariff (the "Tariff"). The Tariff was approved by the IURC on September 11, 2002, and contained approved fees and procedures relating to the disconnection of residential water service for nonpayment. According to the terms of the Tariff, the procedure for involuntary disconnection was as follows:

> (D) Procedure for Involuntary Disconnection of Residential Customers. Immediately preceding the disconnection of service to a residential customer, the Department's employee designated to perform such function will attempt to identify himself to the residential customer or other responsible person then at the premises. The employee will announce the purpose of the visit, and a record of the visit will be maintained for at least thirty (30) days. The employee will also attempt to inform the residential customer or other responsible person of the reason for disconnection including, if the reason for disconnection is nonpayment, the amount of any delinquent bill. The employee will request from the residential customer any available

verification that the reason for disconnection of service is no longer valid (such as, but not limited to, written evidence that the delinquent bill has been paid or evidence that the conditions, circumstances or practices which caused the disconnection have been corrected) or that the reason of disconnection is currently in dispute and under review, pursuant to Rule 11. The employee will not be required to accept payment in order to prevent the service from being disconnected for nonpayment; however, the Department's 24-hour payment agreement will be offered as an option to disconnection should the customer or other responsible party offer such payment. Upon the presentation of satisfactory evidence or acceptance by the customer or other responsible party of the Department's 24-hour payment agreement, service will not be disconnected. When the employee has disconnected the service, he will give to a responsible person at the residential customer's premises, or if no one is at home, will leave at an entry way on the premises, a notice stating that service has been disconnected and the address and telephone number of the Department where the customer may arrange to have service reconnected.

Appellant's App. pp. 46-47. The Tariff also provided that a residential customer would be subject to a $25 re-connect fee after having their water service involuntarily disconnected for nonpayment. Further, in addition to its other terms, the Tariff set forth the administrative process to be utilized by aggrieved customers. Specifically, the Tariff provided as follows:

> (A) <u>Complaint</u>. A customer may complain to the Department at any time about any bill which is not then delinquent, a security deposit, a disconnection notice, or any other matter relating to the Department's service and may also request a conference about such matters. The complaints may be made in person, in writing, or by completing a form available from either the [IURC] or from the Department at its business office. A complaint shall be considered filed upon receipt by the Department, except mailed complaints shall be considered filed as of the postmark date. In making a complaint or requesting a conference (hereinafter "complaint"), the customer shall state his name, service address and the general nature of his complaint.
>
> (B) <u>Investigation of Complaint and Notification of Proposed Disposition</u>. Upon receiving each such complaint, the Department will investigation [sic] the matter, confer with the customer when requested and notify him, in writing, of its proposed disposition of the matter. Such written notification will advise the customer that he may, within seven days following the date on which such notification is mailed, request a review of the Department's proposed disposition by the [IURC]. If the customer requests a

4

special meter reading, the first reading of the customer's meter by the Department during its investigation shall not be subject to the charge for a special meter reading prescribed in the Department's rate schedules. Subsequent readings, however, if requested by the customer, will be subject to the charge.

Appellant's App. p. 63.   The IURC has also established and made available procedures for the handling of complaints against a utility.

On March 4, 2011, Bridges filed a complaint in the trial court alleging that Veolia and/or the Department (collectively, the "Appellees") committed a breach of contract by violating the terms of the Tariff governing the service provided to residential customers.[2] Specifically, Bridges alleged that Veolia turned off her residential water service without following the procedures set forth in the Tariff on two separate occasions.  In bringing the suit, Bridges sought damages,[3] attorneys' fees, and costs.  Bridges also requested that the trial court impose an injunction prohibiting Veolia from continuing to disconnect residential water service in a manner not permitted by the Tariff.[4]

On May 16, 2011, the Department moved to dismiss Bridges's complaint alleging that the trial court lacked subject matter jurisdiction over the matter because Bridges had failed to

---

[2] We note that while Bridges asserts that she filed suit individually and as a representative of a class of those similarly situated, there has been no class certification in the instant matter.

[3] It is unclear what monetary damages Bridges is alleging, if any, in addition to the $25 re-connect fee that she was charged on one of the two instances that she claims her residential water service was improperly disconnected.  When asked at oral argument what these damages might be, counsel for Bridges was unable to articulate any specific additional damages and acknowledged that, with respect to Bridges, there were no easily calculated damages other than the $25 re-connect fee.

[4] The parties agree that Bridges's request for an injunction against Veolia is moot because at some point during 2011, the Department sold the waterworks assets to Citizens Energy Group and Veolia is no longer involved with the waterworks functions in Indianapolis.

exhaust the administrative remedies available to her through the Tariff. Bridges filed a response to the Department's motion to dismiss on June 13, 2011, in which she argued that the trial court had jurisdiction because she presented her claim as a breach of contract action and also that utilization of the Tariff-prescribed administrative remedies would have been futile. On June 21, 2011, Veolia joined the Department's motion.[5]

The trial court heard argument on the Appellees' motion to dismiss on July 22, 2011. At Bridges's request, the trial court provided the parties with the opportunity to file additional post-hearing submissions. On August 25, 2011, the trial court granted the Appellees' motion to dismiss. Bridges filed a motion to correct error on September 26, 2011, which was denied by the trial court on November 9, 2011. This appeal follows.

## DISCUSSION AND DECISION

On appeal, Bridges contends that the trial court abused its discretion in denying her motion to correct error after the trial court granted the Appellees' motion to dismiss her complaint for lack of subject matter jurisdiction pursuant to Indiana Trial Rule 12(B)(1).

> Motions to correct error are governed by Trial Rule 53.3. *Trisler v. Executive Builders, Inc.*, 647 N.E.2d 390, 393 (Ind. Ct. App. 1995), *trans. denied*. "That rule provides that a motion to correct error 'shall be deemed denied' if a trial judge fails to rule upon it 'within thirty (30) days' after it was heard or forty-five (45) days after it was filed, if no hearing is required...." Ind. Trial Rule 53.3(A). "This denial is automatic; it is 'self-activating upon the passage of the requisite number of days.'" *Trisler*, 647 N.E.2d at 393 (quoting *Remington Freight Lines, Inc. v. Larkey*, 644 N.E.2d 931, 936 (Ind. Ct. App. 1994)). Trial Rule 53.3(A) further provides, "Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied." T.R. 53.3(A).

---

[5] Because Veolia joined the Department's motion, we will hereinafter refer to the motion as "Appellees' motion."

6

Generally, a trial court has wide discretion to correct errors, and we will reverse only for an abuse of that discretion. *Paulsen v. Malone*, 880 N.E.2d 312, 313 (Ind. Ct. App. 2008). An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom, or is based on impermissible reasons or considerations. *Id.*

*Wurster Const. Co., Inc. v. Essex Ins. Co.*, 918 N.E.2d 666, 671 (Ind. Ct. App. 2009).

In arguing that the trial court abused its discretion by denying her motion to correct error, Bridges claims that the IURC did not have exclusive jurisdiction over her claim. Alternatively, Bridges claims that even if the IURC did have exclusive jurisdiction over her claim, her failure to exhaust the available administrative remedies should be excused because the exhaustion of said remedies would have been futile. For their part, the Appellees argue that the IURC did have exclusive jurisdiction over Bridges's claim. Appellees further argue that exhaustion of the available administrative remedies would not have been futile, and, as such, Bridges's failure to exhaust said remedies should not be excused.

## A. Whether Bridges Was Required to Exhaust the Available Administrative Remedies Before Bringing the Underlying Action in the Trial Court

The General Assembly created the [IURC] primarily as a "fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature." *United Rural Elec. Membership Corp. v. Indiana & Mich. Elec. Co.*, 549 N.E.2d 1019, 1021 (Ind. 1990) ("UREMC"). Its authority "includes implicit powers necessary to effectuate the statutory regulatory scheme." *Office of Utility Consumer Counselor v. Public Serv. Co.*, 608 N.E.2d 1362, 1363-64 (Ind. 1993). Still, as a creation of the legislature, the Commission may exercise only that power conferred by statute. *UREMC*, 549 N.E.2d at 1021.

*United States Gypsum, Inc. v. Ind. Gas Co.*, 735 N.E.2d 790, 795 (Ind. 2000).

Any attack on the validity or application of a utilities' tariff approved by the utility commission is within the exclusive jurisdiction of the Public Service

7

> Commission (now the IURC). *Indiana Bell Tel. Co., Inc. v. Friedland* (1978), 175 Ind. App. 622, 373 N.E.2d 344, *cert. denied*, 440 U.S. 916, 99 S.Ct. 1233, 59 L.Ed.2d 465. Where the legislature has provided an exclusive administrative remedy, the courts are without jurisdiction until the statutory procedure has been exhausted or denied. *Indiana Forge and Machine Co., Inc. v. Northern Indiana Public Service Co.* (1979), Ind. App., 396 N.E.2d 910. The exhaustion of administrative remedies is the necessary precursor to judicial review. *Id.*

*Haggard v. PSI Energy, Inc.*, 575 N.E.2d 687, 690 (Ind. Ct. App. 1991).

"It has long been Indiana law that a claimant with an available administrative remedy must pursue that remedy before being allowed access to the courts." *Turner v. City of Evansville*, 740 N.E.2d 860, 861 (Ind. 2001). "If a party fails to exhaust administrative remedies, the trial court lacks subject matter jurisdiction." *Id.* at 861-62. The rationale underlying this policy is that administrative bodies have specialized expertise and, as such, are better suited to settle disputes between customers and regulated utilities. *State v. Sproles*, 672 N.E.2d 1353, 1358 (Ind. 1996). "Even when neither statute nor agency rule specifically mandates exhaustion as a prerequisite to judicial review, the general rule is that a party is not entitled to judicial relief from an alleged or threatened injury until the prescribed administrative remedy has been exhausted." *Austin Lakes Joint Venture v. Avon Utils., Inc.*, 648 N.E.2d 641, 644 (Ind. 1995).

The Indiana Supreme Court has, on several occasions, articulated that the reasoning behind the policy of requiring exhaustion of administrative remedies before review by the courts is permitted is that "[p]remature litigation may be avoided, an adequate record for judicial review may be compiled, and agencies retain the opportunity and autonomy to correct their own errors." *Advantage Home Health Care, Inc. v. Ind. State Dep't of Health*,

829 N.E.2d 499, 503 (Ind. 2005); *Turner*, 740 N.E.2d at 862; *State Bd. of Tax Comm'rs v.*

*Montgomery*, 730 N.E.2d 680, 684 (Ind. 2000). "Even if the ground of complaint is the

unconstitutionality of the statute, which may be beyond the agency's power to resolve,

exhaustion may still be required because administrative action may resolve the case on other

grounds without confronting broader legal issues." *Turner*, 740 N.E.2d at 862 (internal

quotation omitted).

"The exhaustion doctrine is intended to defer judicial review until controversies have

been channeled through the complete administrative process." *Austin Lakes*, 648 N.E.2d at

644.

> The exhaustion requirement serves to avoid collateral, dilatory action of the
> likes of the instant action and to ensure the efficient, uninterrupted progression
> of administrative proceedings and the effective application of judicial review.
> It provides an agency with the opportunity to correct its own errors, to afford
> the parties and the courts the benefit of [the agency's] experience and
> expertise, and to compile a [factual] record which is adequate for review.

*Id*. (internal quotations omitted).

Again, Bridges argues that the trial court abused its discretion in denying her motion

to correct error because her claim against the Appellees did not fall within the exclusive

jurisdiction of the IURC, and, as such, she was not required to exhaust the available

administrative remedies before bringing her claim in the trial court. Alternatively, Bridges

argues that even if required, her failure to exhaust the administrative remedies should be

excused because exhaustion would have been futile. Therefore, upon review, in order to

determine whether the trial court acted within its discretion in denying Bridges's motion to

correct error, we must determine whether Bridges's claim fell within the type of claims

9

covered by the exclusive jurisdiction of the IURC, thus requiring exhaustion of the available administrative remedies. If so, we must further determine whether exhaustion of said remedies would have been futile.

It is undisputed that the Department is a municipal utility and that the IURC's jurisdiction over municipal utilities is somewhat more limited than its jurisdiction over public utilities. In the instant matter, Bridges asserts that the Appellees committed an unreasonable act, *i.e.*, disconnecting her residential water service in violation of both the Tariff and 170 IAC 6-1-16-(f). Thus, Bridges argues that her claim against the Appellees is governed by Indiana Code sections 8-1-2-34.5 or 8-1-2-54.

Indiana Code section 8-1-2-34.5 reads, in relevant part, as follows:

(a) The [IURC] shall establish reasonable rules and regulations to govern the relations between *public utilities* and any or all classes of their customers. Those rules and regulations shall cover the following subjects:
    (1)    extension of service;
    (2)    extension of credit;
    (3)    deposits, including interest thereon;
    (4)    billing procedures;
    (5)    termination of service;
    (6)    complaints; and
    (7)    information and notice to customers of their rights under the rules.
(b) Notwithstanding IC 8-1-2-45, the [IURC] may investigate and enter orders on complaints filed by individual customers arising under this section. The [IURC] may establish an appeals division to act on its own behalf regarding individual customer complaints. The decision of the division shall be binding on all parties to the complaint. The [IURC] shall review decisions of the appeals division upon timely request by an affected party.

(Emphasis added).

Indiana Code section 8-1-2-54 reads as follows:

10

Upon a complaint made against any *public utility* by any mercantile, agricultural or manufacturing society or by any body politic or municipal organization or by ten (10) persons, firms, limited liability companies, corporations, or associations, or ten (10) complainants of all or any of the aforementioned classes, or by any public utility, that any of the rates, tolls, charges or schedules or any joint rate or rates in which such petitioner is directly interested are in any respect unreasonable or unjustly discriminatory, or that any regulation, measurement, practice or act whatsoever affecting or relating to the service of any public utility, or any service in connection therewith, is in any respect unreasonable, unsafe, insufficient or unjustly discriminatory, or that any service is inadequate or can not be obtained, the commission shall proceed, with or without notice, to make such investigation as it may deem necessary or convenient. But no order affecting said rates, tolls, charges, schedules, regulations, measurements, practice or act, complained of, shall be entered by the commission without a formal public hearing.

(Emphasis Added).

The clear language of both Indiana Code section 8-1-2-34.5 and 8-1-2-54 limits these sections' application to complaints against public utilities. In *Gypsum*, the Indiana Supreme Court held that in light of the clear language of Indiana Code section 8-1-2-54, the IURC's jurisdiction under Indiana Code section 8-1-2-54 is limited to public utilities and does not extend to municipal utilities like the Department. *See* 735 N.E.2d at 797.

For their part, the Appellees contend that, Bridges's claim effectively amounts to a challenge to the imposition of a charge that had been approved by the IURC, and, as a result, relevant statutory authority expressly grants the IURC exclusive jurisdiction over Bridges's claim against the Appellees. Again, the Appellees acknowledge that the IURC's jurisdiction in certain circumstances is limited to public utilities. *See* Ind. Code §§ 8-1-2-34.5 and 8-1-2-54. Appellees, however, argue that this court should look beyond the statutes relied on by Bridges to determine whether any other relevant statutes confer exclusive jurisdiction to the

11

IURC over complaints against a municipal utility like the Department.

This Court has previously determined that the IURC's power to approve rates and charges for municipal utilities necessarily gives rise to the power to investigate the justness of the application of these rates and charges, make findings, enter orders, and order payment for the expenses of the investigation. *See Bloomington Country Club, Inc. v. City of Bloomington Water & Wastewater Utils.*, 827 N.E.2d 1213, 1219 (Ind. Ct. App. 2005), *trans. denied.* In *Bloomington Country Club*, the Country Club filed a petition with the IURC claiming that the utility's application of the water rate was unreasonable and unjustly discriminatory. *Id*. at 1217. The Utility filed a motion to dismiss claiming that the IURC lacked jurisdiction to grant the Country Club's request to investigate the reasonableness of the irrigation rate. *Id*. The IURC denied the Utility's motion to dismiss. *Id*. On appeal, the Utility argued that the IURC lacked jurisdiction to investigate the already adopted rates and charges of a municipally owned utility because Indiana Code section 8-1-2-68 does not apply to municipally owned utilities. *Id*. at 1218-19.

> Indiana Code section 8-1-2-68 reads in relevant part:
>
> Whenever, upon an investigation, the commission shall find any rates, tolls, charges, schedules, or joint rate or rates to be unjust, unreasonable, insufficient, or unjustly discriminatory, or to be preferential or otherwise in violation of any of the provisions of this chapter, the commission shall determine and by order fix just and reasonable rates, tolls, charges, schedules, or joint rates to be imposed, observed, and followed in the future in lieu of those found to be unjust, unreasonable, insufficient, or unjustly discriminatory or preferential or otherwise in violation of any of the provisions of this chapter.

Upon review, we noted that Indiana Code section 8-1-2-68 did not explicitly limit its application to "public utilities" and concluded that because it authorized the IURC to act

12

upon an investigation that leads to certain findings, the power to initiate such an investigation was implied. *Bloomington Country Club*, 827 N.E.2d at 1219. In addition, we further noted that "[a] subsequent section provides for payment of the IURC's expenses 'upon any investigation made under the provisions of this chapter, either upon complaint against any *municipal utility*, or upon the petition of such municipal utility....'" *Id*. (quoting Ind. Code § 8–1–2–70).

In light of the well-settled principle that "[c]ourts will not construe a statute in a manner that will render another a nullity," we concluded that "[a] reading of the provisions together leads to the conclusion that the IURC has been granted the power to initiate an investigation as to whether a rate is 'unjust, unreasonable, insufficient, or unjustly discriminatory' along with its power to issue an order addressing such a finding and to order payment for the expense of its investigation." *Id*. We further concluded that "such a conclusion is consistent with the undisputed authority of the IURC to approve the rates being applied by" municipal utilities, *id.*, and that "[g]iven the statutory provisions discussed, to hold that the legislature did not grant to the IURC the authority to investigate the municipal utility's application of rates which it had approved would produce an absurd result, and a statute 'is to be construed so as to not bring about an absurd result.'" *Id*. at 1220 (quoting *Citizens Action Coal. of Ind. v. N. Ind. Pub. Serv. Co.,* 796 N.E.2d 1264, 1269 (Ind. Ct. App. 2003), *trans. denied*).

Likewise, we believe that the rationale behind our conclusion in *Bloomington Country Club* can reasonably be extended to Indiana Code section 8-1-2-69, which, like Indiana Code

13

sections 8-1-2-68 and 8-1-2-70, does not contain language expressly limiting its application to public utilities. Indiana Code section 8-1-2-69 provides in relevant part:

> Whenever, upon the investigation made under the provisions of this chapter, the commission shall find any regulations, measurements, practices, acts, or service to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory, or otherwise in violation of any of the provisions of this chapter … the commission shall determine and declare and by order fix just and reasonable measurements, regulations, acts, practices, or service to be furnished, imposed, observed, and followed in the future in lieu of those found to be unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory, inadequate, or otherwise in violation of this chapter, as the case may be, and shall make such other order respecting such measurement, regulation, act, practice, or service as shall be just and reasonable.

Thus, applying the rationale behind our conclusion in *Bloomington Country Club*, we conclude that Indiana Code sections 8-1-2-68 through 8-1-2-70 grant the IURC exclusive jurisdiction over Bridges's claim regardless of whether it is treated as a challenge to and request for reimbursement of the $25 re-connect fee imposed by the Appellees or as a challenge to the Appellees' allegedly improper act of terminating Bridges's residential water service in a manner inconsistent with the terms of the Tariff. As such, we conclude that the IURC has exclusive jurisdiction over Bridges's claim.

Furthermore, to the extent that the Tariff amounts to a contract between the Department and its customers, the Tariff binds customers to exhaust administrative remedies when filing a complaint against the utility or challenging an act of or charge imposed by it. In filing suit in the trial court without first exhausting the available administrative remedies, Bridges is effectively seeking to enforce one portion of the Tariff while disregarding the provision requiring the exhaustion of administrative remedies. Bridges may not do so. *See*

14

*Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007) (providing that the language of a contract should be construed so as not to render any words, phrases, or terms ineffective or meaningless); *Francis v. Yates*, 700 N.E.2d 504, 506 (Ind. Ct. App. 1998) (providing that specific words and phrases found in a contract cannot be read exclusive of other contractual provisions and that the meaning of a contract is to be determined from an examination of all its provision, and not from a consideration of individual words, phrases or even paragraphs read alone).

## B. Whether Bridges's Failure to Exhaust the Available Administrative Remedies Should be Excused

Having concluded that the IURC has exclusive jurisdiction over Bridges's claim against the Appellees, we must next consider whether Bridges's failure to exhaust the available administrative remedies should be excused. Again, Bridges argues that even if the IURC did have exclusive jurisdiction over her claim against the Appellees, she should be excused from exhausting the available administrative remedies because the exhaustion of the available administrative remedies would have been futile. Appellees, for their part, argue that exhaustion of the available administrative remedies would not have been futile.

> While "exhaustion of administrative remedies may be excused if the exercise would be futile," *M-Plan, Inc. v. Ind. Comprehensive Health Ins. Ass'n*, 809 N.E.2d 834, 839 (Ind. 2004), "the exhaustion requirement ... should not be dispensed with lightly on grounds of 'futility.'" [*Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1224 (Ind. 2000)]. To prevail upon a claim of futility, "one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances." *M-Plan*, 809 N.E.2d at 840.

*Johnson v. Celebration Fireworks, Inc.*, 829 N.E.2d 979, 984 (Ind. 2005).

15

In the instant matter, Bridges sought damages, attorneys' fees, costs, and an injunction prohibiting the Appellees from continuing to disconnect residential water service without following the terms of the Tariff. The request for the injunction is moot, however, because the Department sold the waterworks assets in 2011 and Veolia is no longer involved in the administration of waterworks assets. The damages sought by Bridges appear to be merely the recovery of the $25 re-connect fee that she incurred after one instance when she claims he residential water service was disconnected in violation of the terms of the Tariff.

In *Northern Indiana Public Service Co. v. Citizens Action Coalition of Indiana*, 548 N.E.2d 153, 160-61 (Ind. 1989), the Indiana Supreme Court held that Indiana Code section 8-1-2-69 provided the IURC with the power to order a refund of charges collected by utilities, plus interest. Furthermore, opinions of the IURC indicate that the IURC has the power, and in fact does, award refunds of charges paid by customers to utilities, including municipal utilities. *See, e.g.*, *In re Town of Cedar Lake*, IURC Cause No. 43895, 2010 Ind. PUC LEXIS 298 (Aug. 25, 2010) (ordering a refund of $9000); *In re Easterly v. Ind. Gas Co.*, IURC Cause No. 43841, 2010 Ind. PUC LEXIS 222 (June 23, 2010) (ordering a refund for service and investigation fees); *In re Brenston v. N. Ind. Pub. Serv. Co.*, IURC Cause No. 43708, 2010 Ind. PUC LEXIS 169 (May 19, 2010) (ordering a refund of $12.30); *In re Park Jefferson v. N. Ind. Pub. Serv. Co.*, IURC Cause No. 42671, 2005 Ind. PUC LEXIS 383 (Nov. 2, 2005) (ordering that Complainant shall be responsible for ½ the disputed amount and the utility shall be responsible for the other half). Thus, because the IURC would have the authority to order the Appellees to refund the damages allegedly suffered by Bridges, it

would not have been futile for Bridges to exhaust the administrative remedies available to her.

Furthermore, even if Bridges were to be unsuccessful in an administrative challenge, resort to the IURC may produce a reasoned explanation of the lawfulness of the Appellees' actions, and that, in and of itself, could be of value before resorting to the courts to resolve such an issue. *See Johnson*, 829 N.E.2d at 984. The same is true even if Bridges were alleging damages in addition to the refund of the $25 re-connect fee because the IURC would be given the opportunity to use its expertise and experience to determine whether the Appellees acted in a manner inconsistent with the procedure for the disconnection of a customer's residential water service set forth in the Tariff. If the IURC were to determine that the Appellees did, in fact, violate the terms of the Tariff, Bridges would then have the opportunity to seek any additional damages incurred beyond a refund of the $25 re-connect fee in the trial court.

In sum, having concluded that Bridges's claim falls within the exclusive jurisdiction of the IURC and that exhaustion of the available administrative remedies would not have been futile, we conclude that the trial court acted within its discretion in denying Bridges's motion to correct error because the trial court did not have subject matter jurisdiction over Bridges's claim.

The judgment of the trial court is affirmed.

ROBB, C.J., and SHEPARD, SJ., concur.

17